IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher Prosser, individually and<br>on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | |
| Vs. | ) | No. |
| | ) | |
| USHealth Advisors, LLC | ) | COMPLAINT CLASS ACTION |
| Registered Agent: | ) | |
| CT Corporation | ) | |
| 120 S. Central Ave | ) | |
| Clayton, Mo. 63105; and | ) | |
| | ) | |
| USHealth Advisors, LLC | ) | |
| CT Corporation – Registered Agent | ) | |
| 1999 Bryan St., Ste. 900 | ) | |
| Dallas, TX 75201-3136; and | ) | |
| | ) | |
| Patrick Carr, President | ) | |
| USHealth Advisors, LLC | ) | |
| CT Corporation – Registered Agent | ) | |
| 1999 Bryan St., Ste. 900 | ) | |
| Dallas, TX 75201-3136; and | ) | |
| | ) | |
| Troy A. McQuagge, Chief Executive Officer | ) | |
| USHealth Advisors, LLC | ) | |
| CT Corporation – Registered Agent | ) | |
| 1999 Bryan St., Ste. 900 | ) | |
| Dallas, TX 75201-3136; and | ) | |
| | ) | |
| James White, Vice President | ) | |
| USHealth Advisors, LLC | ) | |
| CT Corporation – Registered Agent | ) | |
| 1999 Bryan St., Ste. 900 | ) | |
| Dallas, TX 75201-3136; and | ) | |
| | ) | |
| John and Jane Does 1 through 50 | ) | |
| Call Center Telemarketers/Agents | ) | |
| CT Corporation – Registered Agent | ) | |
| 1999 Bryan St., Ste. 900 | ) | |
| Dallas, TX 75201-3136; and | ) | |

1

UnitedHealth Group, Inc.                          )
9900 Bren Rd E                                    )
Minnetonka, MN 55343; and                         )
                                                  )
Andrew Witty, Chief Executive Officer             )
UnitedHealth Group, Inc.                          )
Agent: The Corporation Trust Company              )
1209 Orange St.                                   )
Wilmington, DE 19801; and                         )
                                                  )
Dirk McMahon, Chief Operating Officer             )
UnitedHealth Group, Inc.                          )
Agent: The Corporation Trust Company              )
1209 Orange St.                                   )
Wilmington, DE 19801; and                         )
                                                  )
Brian Thompson, Chief Executive Officer           )
UnitedHealth Group, Inc.                          )
Agent: The Corporation Trust Company              )
1209 Orange St.                                   )
Wilmington, DE 19801; and                         )
                                                  )
Team Hiter, LLC                                   )
2216 Bryce CV                                     )
Nashville, TN; and                                )
                                                  )
Nicholas A. Hiter, President and CEO              )
Team Hiter, LLC                                   )
2216 Bryce CV                                     )
Nashville, TN; and                                )
                                                  )
                    Defendants.                   )

---

**COMPLAINT CLASS ACTION**

---

I.    <u>Preliminary Statement</u>

1.        Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption of phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress

enacted the Telephone Consumer Protection Act of 1991. Pub. L No. 102-243, 105 Stat. 2394 (1991)(codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6) and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

      2.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.;* 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person 's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id* ...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to _protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649-50 (4th Cir. 2019).

      3.    The Plaintiff Christopher Prosser alleges that USHealth Advisors, LLC ("USHA"), Patrick Carr ("Carr"), President of USHA, Troy McQuagge, Chief Executive Officer of USHA,

James White, Vice Preside of USHA,  John and Jane Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UnitedHealth Group, Incorporated ("UHG"), Andrew Witty ("Witty"), Chief Executive Officer of UHG, Dirk McMahon ("McMahon"), Chief Operating Officer of UGH,  Brian Thompson ("Thomson") Chief Executive Officer of UHG, Team Hiter, LLC ("Hiter"), and Nicholas Hiter ("NH"), as well as other USHA, Hiter and, UHG agents, employees and/or vendors, made unsolicited telemarketing calls to his residential telephone number that is listed on the National Do Not Call Registry and the Missouri State do not call registry.

4.      Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls.

5.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

II.      <u>Parties</u>

6.       Plaintiff Christopher Prosser (hereinafter referred to as "Plaintiff," "Chris," or "Mr. Prosser") is an individual residing in this District.

7.      Defendant USHealth Advisors, LLC ("USHA") is an insurance company and lead generator for other insurance companies. USHA is a Texas based company, registered as a foreign corporation in the state of Missouri, and is a company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its local office located at 120 S. Central Ave, Clayton, Mo. 63105 and its Texas based headquarters located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

4

8.    Defendant USHealth Advisors, LLC ("USHA") is an insurance company and lead generator for other insurance companies. USHA is a Texas based company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its Texas based headquarters located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

9.    Defendant Partick Carr is the president of USHA, an insurance company and lead generator for other insurance companies. USHA is a Texas based company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its Texas based headquarters located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. Defendant Carr is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of USHA to persons on the federal do not call registry, just as they did with the Plaintiff.

10.    Defendant Troy McQuagge is the Chief Executive Officer of USHA, an insurance company and lead generator for other insurance companies. USHA is a Texas based company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its Texas based headquarters located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. Defendant McQuagge is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of USHA to persons on the federal do not call registry, just as they did with the Plaintiff.

11.    Defendant James White is the Vice President of USHA, an insurance company and lead generator for other insurance companies. USHA is a Texas based company that makes

telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its Texas based headquarters located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. Defendant White is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of USHA to persons on the federal do not call registry, just as they did with the Plaintiff.

12.     Defendants John and Jane Doe's ("John/Jane Does) 1 through 50 are unknown telemarketers, employees, agents or vendors of USHA and UHG, the companies that make telemarketing calls from this District and to this District to persons on the do not call registry, just as it did with the Plaintiff.

13.     Defendant UnitedHealth Group, Incorporated ("UHG"), is a Minnesota and Missouri based  parent company of USHA and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of USHA to persons on the federal do not call registry, just as they did with the Plaintiff, with its Minnesota corporate office located at 9900 Bren Rd E, Minnetonka, MN 55343.

14.     Defendant Andrew Witty ("Witty") is the Chief Executive Officer of UHG, Delaware

which does business in Minnesota and Missouri. Defendant Witty is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of UHG, HMI and HMIA to persons on the federal do not call registry, just as they did with the Plaintiff.

15.     Defendant Dirk McMahon ("McMahon") is the Chief Operating Officer of UHG, Delaware, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of USHA and UGH to persons on the federal do not call registry, just as they did with the Plaintiff.

16.     Defendant Brian Thompson ("Thomson") is the Chief Executive Officer of UHG, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of UHG and USHA to persons on the federal do not call registry, just as they did with the Plaintiff.

17.     Defendant Team Hiter, LLC ("Hiter") is an insurance company and lead generator for other insurance companies and partners with or is an agent, vendor or representative of USHA and UHG, and is a Tennessee company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its principal office located at 2216 Bryce CV, Nashville, TN 37211.

18.     Defendant Nicholas Hiter ("NH") is the president and CEO of Team Hiter, LLC ("Hiter"), an insurance company and lead generator for other insurance companies and partners with or is an agent, vendor or representative of USHA and UHG, and is a Tennessee company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, just as it did with the Plaintiff, with its principal office located at 2216 Bryce CV, Nashville, TN 37211. Defendant Hiter is personally responsible for the promulgation and enforcement of policies and procedures for each of the above Defendants which entices, encourages and condones telemarketing calls by and through each defendant, their employees,

agents, and vendors to numbers listed on the federal do not call registry just as they did with the Plaintiff.

### Jurisdiction and Venue

19.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012). This Court has supplemental jurisdiction under the pendant state claims for violations of the Missouri Merchandising Practices Act ("MMPA") in accord with 28 U.S.C. 1367. This court has supplemental jurisdiction in accord with 28 U.S.C. 1367 for all pendant state claims over both the MMPA and Missouri No Call registry claims under Chapter 407.010 et seq. RSMo.

20.    This Court has personal jurisdiction over the Defendants because they either reside in this District and/or made the calls into this District.

21.    Venue is proper in accord with 28 U.S.C 1391(b) because the calls at issue were made into this District and/or from this District.

### TCPA Background

22.    In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5)(1991)(codified at  47 U.S.C. §227).

23.    The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.P.R.§ 64.1200(c)(2).

24.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

25.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. 227(c) (5); 47 C.F.R. 64.1200 (c)(2). Damages under the this code are up to $6,000 per call or text.

**THE MISSOURI NO-CALL LAW**

26.     Similarly, the Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1, which is to be construed in *pari materia*, provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

27.     A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

28.     A "telephone solicitation" is defined as "any voice communications over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services..." Mo. Rev. Stat. § 407.1095(3).

29.     Defendants call to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and

9

expense without any consideration in return. Defendants' practice effectively forced Plaintiff to listen to Defendants' advertising campaign.

30.     Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

31.     Defendants' actions prevented the Plaintiff's telephone from being used for other purposes during the time Defendant was occupying the Plaintiff's telephone for Defendants' unlawful purpose.

32.     Chapter 407.1107 provides for up to $5,000 in damages for each knowingly violation.

**THE MISSOURI TELEMARKETING LAW**

33.     Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)     Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4)     Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

34.     MO Rev. 407.1104 provides in pertinent part:

1.     Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

2.     No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

10

III.     Factual Allegations

35.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, agents, employees and/or vendors, as well as other USHA and UHG agents, employees and/or vendors, sell and broker insurance policies which target senior citizens, which indemnify policy holders for medical bills and other medical needs.

36.     To generate leads, Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, agents, employees and/or vendors, as well as other USHA and UHG agents, employees and/or vendors, which upon information and belief includes other unknown marketing firms and call centers, make random, robocall and automated dialing system generated telemarketing calls capable of storing and deploying random calls to consumers who have never had a relationship with any of the Defendants, and who never consented to receive their calls.

37.     Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39).

38.     Plaintiffs telephone number (the "Number"), 314-698-XXXX, is on the National Do Not Call Registry, and has been continuously since 2008.

39.     Despite this, Defendants USHA, Carr, McQuagge, Doe's 1 through 50, UHG, Witty, McMahon, Thomson, Hiter, and NH, agents, employees and/or vendors, as well as other USHA, UHG, and Hiter agents, employees and/or vendors as approved, encouraged, enticed and sanctioned by Defendant's Witty, McMahon, Thomson's, and NH's policies, practices and procedures, placed more than forty (40) telemarketing calls and texts to Mr. Prosser beginning on

11

December 30, 2022, when the first call was made from telephone numbers (314) 671-0005,

whereupon Defendant John Doe telemarketer openly stated he was an Agent for USHA and

UHG, and solicited Mr. Prosser to purchase an Insurance Policy from Defendant's USHA and

UHG. Just prior to being connected to the telemarketer, Plaintiff Prosser heard a click, and the

call was then transferred and connected.

40.     Despite the fact that Plaintiff indicated that they were interrupting his work and he

was extremely busy and could not take the call, and that he was on the National Do Not Call

Registry, Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers",

"Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their agents, employees and/or

vendors, made another series of telemarketing calls to the Plaintiff over the next week or more on

behalf of the Defendants, collectively. These calls are detailed as follows:[1]

| | | | |
|---|---|---|---|
| a. | 12/30/2022 | 1:15 pm | 314-671-0005 |
| b. | 12/30/2022 | 3:06 pm | 314-671-0005 |
| c. | 12/30/2022 | 4:01 pm | 314-343-0081 |
| d. | 12/31/2022 | 7:02 am | 863-842-1229 automated text - Melissa |
| e. | 12/31/2022 | 7:06 am | 863-842-1229 automated text – Melissa |
| f. | 12/31/2022 | 8:27 am | 863-842-1229 automated text – Melissa |
| g. | 12/31/2022 | 9:20 am | 314-934-2226 call |
| h. | 12/31/2022 | 9:21 am | 314-671-0005 |
| i. | 12/31/2022 | 9:21 am | 314-343-0081 |
| j. | 12/31/2022 | 9:21 am | 314-343-0081 |
| k. | 12/31/2022 | 9:21 am | 314-343-0081 |
| l. | 12/31/2022 | 9:22 am | 314-934-2139 |

---

[1] Plaintiff has repeatedly informed the defendants and their employees, vendors, and agents both verbally and through text message that they have the wrong number and his number is listed on the Federal and Missouri State do not call registries, yet they continue to deliberately violate the protections afforded by both the code and statute and have now called and texted Plaintiff's private number listed on the federal no call registry more than 86 times.

| | | | |
|---|---|---|---|
| m. | 12/31/2022 | 9:22 am | 314-470-1114 call |
| n. | 12/31/2022 | 9:22 am | 314-934-2139 call |
| o. | 12/31/2022 | 9:23 am | 314-934-2449 call |
| p. | 12/31/2022 | 9:24 am | 314-934-2139 call |
| q. | 12/31/2022 | 9:24 am | 314-934-2139 call |
| r. | 12/31/2022 | 9:24 am | 314-934-2226 call |
| s. | 12/31/2022 | 9:25 am | 813-934-7994 automated text |
| t. | 12/31/2022 | 9:25 am | 314-671-0005 call |
| u. | 12/31/2022 | 9:25 am | 314-470-1114 call |
| v. | 12/31/2022 | 10:32 am | 813-934-7994 automated text |
| w. | 12/31/2022 | 10:47 am | 813-934-7994 automated text |
| x. | 1/1/2023 | 2:24 pm | 863-842-1229 call |
| y. | 1/1/2023 | 2:25 pm | 863-842-1229 automated text - Kayla |
| z. | 1/2/2023 | 6:47 am | 863-842-1229 automated text – Kayla |
| aa. | 1/2/2023 | 7:53 pm | 314-934-2139 call |
| bb. | 1/3/2023 | 11:26 am | 954-429-6235 automated text – William |
| cc. | 1/3/2023 | 11:31 am | 954-429-6235 automated text – William |
| dd. | 1/3/2023 | 2:24 pm | 813-934-7090 automated text |
| ee. | 1/3/2023 | 5:32 pm | 904-299-9563 automated text - Tina |
| ff. | 1/4/2023 | 8:15 am | 904-299-9563 automated text – Tina |
| gg. | 1/4/2023 | 8:29 am | 469-256-2550 automated text – Hope |
| hh. | 1/4/2023 | 8:51 am | 469-256-2550 text – Hope |
| ii. | 1/4/2023 | 10:05 am | 469-256-2550 text – Hope |
| jj. | 1/4/2023 | 11:24 am | 314-934-2139 call |
| kk. | 1/4/2023 | 2:25 pm | 314-470-1114 call |
| ll. | 1/4/2023 | 2:29 pm | 863-842-1381 automated text |
| mm. | 1/4/2023 | 8:31 pm | 314-934-2449 call |
| nn. | 1/5/2023 | 8:07 am | 314-343-0081 call |
| oo. | 1/5/2023 | 8:08 am | 314-934-2226 call |

| | | | |
|---|---|---|---|
| pp. | 1/5/2023 | 11:11 am | 813-515-8185 automated text M. Robinson[2] |
| qq. | 1/5/2023 | 12:12 am | 813-515-8185 automated text M. Robinson |
| rr. | 1/5/2023 | 12:26 am | 813-515-8185 automated text M. Robinson |
| ss. | 1/5/2023 | 2:10 pm | 314-934-2226 call |
| tt. | 1/5/2023 | 2:24 pm | 813-756-7090 automated text |
| uu. | 1/5/2023 | 2:24 pm | 863-842-1381 automated text – Nationwide |
| vv. | 1/5/2023 | 5:17 pm | 314-470-1114 call |
| ww. | 1/5/2023 | 8:12 pm | 314-470-1114 call |
| xx. | 1/6/2023 | 8:26 am | 314-934-2139 call |
| yy. | 1/6/2023 | 9:08 am | 325-246-9606 automated text |
| zz. | 1/6/2023 | 9:10 am | 325-246-9606 automated text |
| aaa. | 1/6/2023 | 9:11 am | 325-246-9606 automated text USHealth |
| bbb. | 1/6/2023 | 11:26 am | 314-934-2139 atds call |
| ccc. | 1/6/2023 | 2:27 pm | 314-934-2449 robo call |
| ddd. | 1/7/2023 | 7:12 pm | 727-231-6565 robo call |
| eee. | 1/7/2023 | 7:13 pm | 314-343-00814 automated text |
| fff. | 1/8/2023 | 8:57 am | 813-278-7349 automated text – Daisy |
| ggg. | 1/8/2023 | 11:57 am | 314-470-1114 robo call |
| hhh. | 1/8/2023 | 11:58 am | 470-240-2882 automated text - Olivia |
| iii. | 1/8/2023 | 11:59 am | 470-240-2882 automated text – Olivia |
| jjj. | 1/8/2023 | 2:59 pm | 941-280-0145 automated text – Taylor |
| kkk. | 1/8/2023 | 5:59 pm | 813-624-2095 auto text – Stephanie D.[3] (Picture with business card in Auto text) |
| lll. | 1/9/2023 | 9:56 am | 813-278-7349 automated text – Daisy |

[2] After repeatedly instructing the Defendants and their agents, employees and vendors both verbally and in texts that the Plaintiff was on both the state and federal no call registries and demanding to cease all contact with him. The Defendants were formally served via certified mail 7022 0410 0001 1758 3148 on January 5, 2023 at 11:23 a.m. with the first draft suit that they were making illegal telemarketing calls to the Plaintiff's private cell number without express written permission as it is registered on the federal DNC since 2008 and Missouri do not call list since July 2022 and to cease further communication.  After this service, the Defendant's made 44 additional calls to Plaintiff.

[3] In this automated text Plaintiff received a photo business card listing Stephanie Darossa, Licensed Health Insurance Advisor. A Google search revealed Defendant Darossa as an agent for USHealth Advisors, Texas – stephanie.darossa@usadvisors.com.

| | | | |
|---|---|---|---|
| mmm. | 1/9/2023 | 4:18 am | 314-934-2449 robo call |
| nnn. | 1/9/2023 | 5:05 am | 314-343-0081 robo call |
| ooo. | 1/10/2023 | 8:18 am | 314-671-0005 robocall |
| ppp. | 1/10/2023 | 11:19 am | 850-204-9954 automated text - Joseph |
| qqq. | 1/10/2023 | 11:20 am | 325-268-9598 autotext- Joseph |
| rrr. | 1/10/2023 | 12:17 pm | 325-268-9598 autotext- Joseph |
| sss. | 1/10/2023 | 4:17 pm | 325-268-9598 autotext- Joseph |
| ttt. | 1/10/2023 | 4:50 pm | 325-268-9598 autotext- Joseph |
| uuu. | 1/10/2023 | 4:51 pm | 325-268-9598 autotext- Joseph |
| vvv. | 1/10/2023 | 5:20 pm | 314-470-1114 robocall |
| www. | 1/10/2023 | 5:31 pm | 314-934-2226 robocall |
| yyy. | 1/11/2023 | 8:10 am | 314-470-1114 robocall |
| zzz. | 1/11/2023 | 11:19 am | 314-954-6235 ATDS text – William |
| aaaa. | 1/11/2023 | 12:42 pm | 813-291-4506 autotext |
| bbbb. | 1/11/2023 | 2:12 pm | 314-934-2449 robocall |
| cccc. | 1/11/2023 | 2:28 pm | 863-842-1381 adts |
| dddd. | 1/11/2023 | 5:13 pm | 314-934-2139 robocall |
| eeee. | 1/12/2023 | 8:06 am | 863-842-1381 text Mike Greenstein |
| ffff. | 1/12/2023 | 8:12 am | 314-671-0005 robocall |
| gggg. | 1/12/2023 | 8:21 am | 863-842-1381 text Mike Greenstein |
| hhhh. | 1/12/2023 | 10:17 am | 314-954-6235 ATDS text – William |
| iiii. | 1/18/2023 | 2:43 pm | 314-934-2139 call |

41.    During each call the Plaintiff answered, the telemarketer solicited Mr. Prosser to purchase an insurance policy from Defendants USHA, Carr, McQuagge, Doe's 1 through 50, UHG, Witty, McMahon, Thomson, Hiter, and NH.

42.    The Defendants persistently harassed and solicited Mr. Prosser to purchase insurance policies from  Defendants USHA, Carr, McQuagge, Doe's 1 through  ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, agents,

employees and/or vendors, even though he is registered on the Federal Do Not Call registry and has been for years and years prior to their unsolicited marketing calls to his private, personal cell phone.

43.    Plaintiffs' privacy has been grossly, deliberately, and repeatedly violated by the above-described telemarketing calls and automated texts.

44.    The Plaintiff never provided his written consent or requested these calls.

45.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed, harassed and caused severe physical injuries.

46.    Defendants made, and continue to make, these telemarketing calls to individuals nationwide without their prior written express consent to do so.

47.    During all of these calls, there was a significant pause before Defendants' representative started speaking, which is a telltale sign that Defendants used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

48.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their agents, employees and/or vendors placed numerous calls alleged in this complaint with one or more predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls alleged below. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

49.     None of the telephone calls alleged in this complaint constituted calls for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

50.     In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

### A.    The Missouri Merchandising Practices Act

51.     The Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

52.     Section 407.020, RSMo provides in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in **or from** the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

53.    Section 407.025.1 provides in pertinent part:

Any person who purchases or leases merchandise primarily for any personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing part attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

54.    Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities intangibles, real estate, or services. This definition of merchandise includes insurance policies advertised and sold by Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents.

55.    Pursuant to authority granted it in §407.145, the Attorney General has promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

56.    15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

18

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

57.      15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

58.      15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
        (A) Violates state or federal law intended to protect the public; and
        (B) Presents a risk of, or causes substantial injury to consumers.

59.      15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

60.      15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission,

or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

61.    15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

62.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-

      (A) Violates state or federal law intended to protect the public; and
      (B) Presents a risk of, or causes substantial injury to consumers.

63.    15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

64.    15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement, or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.
(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence

(1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

65.    15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

66.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
      (A) Violates state or federal law intended to protect the public; and
      (B) Presents a risk of, or causes substantial injury to consumers.

67.    15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

68.    15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement, or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.
(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence are not elements of deception as used in section 407.020.1, RSMo… Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.

69.    15CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

70.    15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2) Reliance and injury are not elements of false promise as used in section 407.20.1, RSMo.

71.    15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.

21

(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

72.    15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

73.    15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.
(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.
(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.
(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

74.    Pursuant to § 407.020 RSMo (Merchandising Practices Act), it is an unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

75.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents, by and through its employees and agents, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed, suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and by engaging in the following:

    a.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents and other unknown telemarketers acting on their behalf, by and

22

through the aid and assistance of the USHA paradigm of disseminating Plaintiff's private phone number through a labyrinth of websites, dissolved companies, and telemarketers and independent contracting agent, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems, owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls.

b.     By falsely and deceptively misidentifying both the telemarketers identity and their company origin to deliberately misrepresent that they were actually employees of Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter, and NH, instead of telemarketers acting as an agent and/or vendor on the Defendants behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

c.     By deceptively using company names and d/b/a's and deliberately concealing company identities throughout the myriad calls, that have been legally dissolved, to dissuade consumers and persons on the federal no call list from pursuing lawful claims under the TCPA and MMPA for knowingly deceptive marketing practices.

d.     By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter providing it to countless other telemarketers so they could illegally call Plaintiff's phone, clearly registered on the no call list, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

23

e.    The badgering of the Plaintiff with myriad unwanted telemarketer solicitations by phone and text to purchased insurance policies, when all he sought, and believed he would receive, was an anonymous right to privacy.

f.    Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter, and NH to hire the other Defendants, who they knew or reasonably should have know were making calls to the 244.3 million people listed on the federal do not call registry in an effort to conceal the identity of the telemarketers, and provide the Defendants with a false and misleading façade of plausible deniability, when they are 100% culpable and funded the illegal calls and texts to the Plaintiff and others similarly situated on the federal no call registry.

g.    By "spoofing" area codes to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents their agents, vendors by and through the aid and assistance of the robo-call and ATDS dialing systems.[4]

h.    As a direct result of the deceptions, false pretense, misrepresentation, unfair and fraudulent practices, concealment, and omission of these material facts of

---

[4] Telemarketers cause a local number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems, including text messages, the Plaintiff has suffered continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand from his employer and loss of thousands of dollars in bonus opportunities, injuries to his privacy rights, his mental health and wellbeing, severe stomach pain, chest pain, elevation of his blood pressure to dangerous levels, and other damages, warranting treble and punitive damages.

<u>Class Action Allegations</u>

76.    Class Definition: Plaintiff seeks to certify a class and brings this Complaint against the Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Classes:

> **Robocall Class and Automatic Telephone Dialing System Class:**
>
> All persons in the United States who received any unsolicited telephone calls from Defendants or their agents on their cellular phone service through the use of any automatic telephone dialing system or artificial or pre-recorded voice system, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint.
>
> **Do Not Call Class ("DNC Class")**:
> All persons in the United States (1) who had his or her telephone number(s) registered with the national Do-Not-Call registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants that promoted solar energy products or services products or services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her.

**Missouri Do Not Call Class ("MDNC Class")**:
All persons in the State of Missouri (1) who had his or her telephone
number(s) registered with the Missouri Do-Not-Call registry for at
least thirty days; (2) who received more than one telephone call or text
made by or on behalf of Defendants that promoted insurance policies
products or services; (3) within a 12-month period; and (4) for whom Defendants
had no current record of consent to place such calls to him or her.

77.    As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure,

Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated

throughout the United States.

78.    Excluded from the Class are counsel, the Defendants, and any entities in which

the Defendants have a controlling interest, the Defendant's agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

79.    Class Numerosity: The exact number of members of each Class is unknown and is

not available to Plaintiff at this time, but such information is readily ascertainable by Defendants

and their agents. The Classes are so numerous that joinder of all members is impractical. Plaintiff

alleges that there are more than 40 members of each Class.

80.    The Class as defined above are identifiable through phone records and phone

number databases.

81.    The potential members of the Class number at least in the thousands.

82.    Individual joinder of these persons is impracticable.

83.    Plaintiff is a member of the Class.

84.    There are questions of law and fact common to Plaintiff and the proposed Class,

including, but not limited to the following:

    a.    Whether Defendants used an "automatic telephone dialing system" or

"artificial or prerecorded voice" calls as such terms are defined or
understood under the TCPA and applicable FCC regulations and orders;

      b.     Whether Defendants had written prior express consent to call Class
members;

      c.     Whether Defendants systematically made telephone calls to members of
the DNC and MDNC Classes whose telephone numbers were registered with the national
Do-Not-Call registry;

      d.     Whether Defendants systematically made telephone calls to members of
the DNC and MDNC Classes where Defendants did not have a current record of consent
to make such telephone calls;

      e.     Whether Plaintiff and Class Members are entitled to damages, including
whether Defendants' violations were performed willfully or knowingly
such that Plaintiff and Class Members are entitled to treble damages; and

      f.     Whether Plaintiff and Class Members are entitled to injunctive relief for
violations of their privacy and attorney's fees and costs.

85.    The Plaintiffs' claims are typical of the claims of members of the Class. Plaintiff
is not different in any relevant way from any other member of the Classes, and
the relief he seeks is common to each Class.

86.    Plaintiff is an adequate representative of the Class because his interests do not
conflict with the interests of the Class, he will fairly and adequately protect the interests of the
Class, and he and other class members are complex litigation paralegals and the Director of
Operations and Legal Services for a St. Louis company, who has hired attorneys experienced in
class actions, including TCPA class actions.

87.     Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

88.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents, vendors, subsidiaries, and sub-contractors.

89.     Injunctive Relief is Appropriate: Based on information and belief, Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, agents, employees and/or vendors continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class

members for which they have no adequate remedy at law.

90.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

Count I<br>
Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)<br>
(On behalf of Plaintiff and the Robocall and ATDS)

91.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Robocall and ATDS Class.

92.    The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . .
> 47 U.S.C. § 27(b)(1)(A).

93.    The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may . . . bring . . . an action based on a violation of [47 U.S.C. § 227(b)] to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $1,500 in damages for each such violation, whichever is greater, or both . . . If the court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].
> 47 U.S.C. § 227(b)(3).

92.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents make outgoing calls to consumers and others in the regular course of their business called Plaintiff and Class members' cellular telephone numbers listed on the do not call registry.

93.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents placed calls to Plaintiff and Class members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which Defendants called at the time the call was made. Rather, the predictive dialers electronically dialed the Class members' cellular telephones in an automated fashion. Predictive dialers are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

93.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents also utilized artificial and/or prerecorded voice calls to call the cellular telephones of Plaintiff and Class Members.

94.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents did not obtain legally effective prior express consent to call the Class members' cellular telephone numbers.

95.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls to Plaintiff and the other members of the Class that were automatically dialed by Defendants' telephone system and/or used an artificial or prerecorded voice or stored his phone number for predictive dialing; made to a cellular telephone number; and not as the result of the Class member's transaction with Defendants or its agents.

96.     Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violations are willful because Defendants knew that Plaintiff and members of the Class had not given prior express consent to receive calls made using an automatic telephone dialing system, artificial, and/or prerecorded voice and that Defendants used these methods to call the cell phones of Plaintiff and Class members.

97.     Plaintiff, on his own behalf, and on behalf of the other members of the Robocall, ATDS and DNC Classes, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents.

98.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees under the Missouri Merchandising Practices Act for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents as follows:

a.      An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes.

b.      Judgment against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents, and in favor of Plaintiff and the other class members in the amount of $1,500 per violation of the TCPA as proven at trial, and $50,000.00 per call as treble damages;

c.      Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d.      An order granting costs and attorneys' fees; and

e.      Such other and further relief as this Court may deem appropriate.

### COUNT II
### Violations of the TCPA Against All Defendants
### by Plaintiff Individually and on Behalf of the DNC Class

99.      Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class.

100.      47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of

said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

101.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102.    47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

Report and Order at ¶ 167.

103.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violated 47 C.F.R. § 64.1200 (c) by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the national Do-Not-Call registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

104.    These individuals requested not to receive calls from Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors, and agents, as set forth in 47 C.F.R. § 64.1200 (d)(3).

105.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents made more than eighty-five (85) unsolicited telephone calls to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

106.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $1,500 in damages for such violations of § 64.1200.

107.    To the extent Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents misconduct is determined to be willful and knowing, the Court

34

should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class in the amount of $50,000.00 per call.

108.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents as follows:

a.    An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes.

b.    Judgment against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents, and in favor of Plaintiff and the other class members in the amount of $1,500 per violation of the TCPA as proven at trial, and $50,000.00 per call as treble damages;

c.    Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d.    An order granting costs and attorneys' fees; and

e.    Such other and further relief as this Court may deem appropriate.

## COUNT III
### Violations of the MDNC Against All Defendants
### by Plaintiff Individually and on Behalf of the MDNC Class

109.    Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class.

110.    The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1, provides:

No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

111.    A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

112.    A "telephone solicitation" is defined as "any voice communications over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services..." Mo. Rev. Stat. § 407.1095(3).

113.    Defendants call to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return. Defendants' practice effectively forced Plaintiff to listen to Defendants' advertising campaign.

114.    Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

115.    Defendants' actions prevented the Plaintiff's telephone from being used for other purposes during the time Defendant was occupying the Plaintiff's telephone for Defendants' unlawful purpose.

116.    Chapter 407.1107 provides for up to $5,000 in damages for each knowingly violation.

117.    Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)    Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4)    Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

118.    MO Rev. 407.1104 provides in pertinent part:

1.    Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

2.    No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

119.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violated Mo. Rev. Stat. § 407.1001 et seq. by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the Missouri Do-Not-Call registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

120.    These individuals requested not to receive calls from Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors, and agents, as set forth in Mo. Rev. Stat. § 407.1076.

121.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents made more than eighty-five (85) unsolicited telephone calls to Plaintiff and members of the Class without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

122.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of Mo. Rev. Stat. § 407.1076, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section Mo. Rev. Stat. § 407.1076, are each entitled, inter alia, to receive up to $5,000 in damages for such violations.

123.    To the extent Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents misconduct is determined to be willful and knowing, the Court

should, pursuant to Mo. Rev. Stat. § 407.1076 treble the amount of statutory damages recoverable by the members of the Class in the amount of $5,000.00 per call.

124.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents as follows:

a.    An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes.

b.    Judgment against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their employees, vendors and agents, and in favor of Plaintiff and the other class members in the amount of $5,000 per violation of Mo. Rev. Stat. § 407.1076 as proven at trial, and $5,000.00 per call as treble damages or $940,000.00;

c.    Equitable and injunctive relief, including injunctions enjoining further violations of Mo. Rev. Stat. § 407.1001 et seq;

d.    An order granting costs and attorneys' fees; and

e.    Such other and further relief as this Court may deem appropriate.

**COUNT IV**
**VIOLATION OF THE MISSOURI MERCHANDISING**
**PRACTICES ACT**

COMES NOW, Plaintiff and for his third cause of action against Defendants USHA, Carr,

McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon,

Thomson, Hiter, and NH, and its employees and/or their agents, vendors and other unknown

telemarketers on their behalf, states:

125.    Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

126.    Section 407.020, RSMo provides in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense,
> false promise, misrepresentation, unfair practice or the concealment, suppression,
> or omission of any material fact in connection with the sale or advertisement of
> any merchandise in trade or commerce or the solicitation of any funds for any
> charitable purpose, as defined in section 407.453, in **or from** the state of
> Missouri, is declared to be an unlawful practice… Any act, use or employment
> declared unlawful by this subsection violates this subsection whether committed
> before, during or after the sale, advertisement, or solicitation.

127.    Section 407.025.1 provides in pertinent part:

> Any person who purchases or leases merchandise primarily for any personal, family
> or household purposes and thereby suffers an ascertainable loss of money or property,
> real or personal, as a  result of the use or employment by another person of a method,
> act or practice declared  unlawful by section 407.020 may bring a  private civil action
> in either the circuit court of the county in which the seller or lessor resides or in
> which the transaction complained of took place, to recover actual damages. The court
> may, in its discretion, award punitive damages and may award to the prevailing part
> attorney's fees, based on the amount of time reasonably expended, and may provide
> such equitable relief as it deems necessary or proper.

128.    Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities

intangibles, real estate or services. This definition of merchandise includes the insurance policies and

services marketed, offered, advertised and sold by Defendants USHA, Carr, McQuagge, Doe's 1

through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and

NH,and its employees and/or their collective agents.

40

129.    Pursuant to authority granted it in §407.145, the Attorney General promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

130.    15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase or is solicited for purchase of merchandise.

(1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

131.    15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

132.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
(A) Violates state or federal law intended to protect the public; and
(B) Presents a risk of, or causes substantial injury to consumers.

133.    15 CSR 60-9.010 provides that:
(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would belikely to induce a person to manifest his/her assent, or which the seller  knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

134    15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence, are not elements of deception as used in section 407.020.1, RSMo… Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.

135.   15CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

136.   15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.

(2) Reliance and injury are not elements of false promise as used in section407.20.1, RSMo.

137.   15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.

(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

138.   15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

139.   15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.

(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.

(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.

42

(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

140.    Pursuant to § 407.020 RSMo (Merchandising Practices Act), it is an unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

141.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and its employees and/or agents, by and through its employees and agents, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed, suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and car sales by engaging in the following:

   a.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of the USHA  paradigm of disseminating Plaintiff's private phone number through a labyrinth of websites, dissolved companies, and telemarketers and independent contracting agent, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems, owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls.

b.      By falsely and deceptively misidentifying both the telemarketers identity and their company origin to deliberately misrepresent that they were actually employees of Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter, and NH, instead of telemarketers acting as an agent and/or vendor on the Defendants behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

c.      By deceptively using company names and d/b/a's and deliberately concealing company identities throughout the myriad calls, that have been legally dissolved, to dissuade consumers and persons on the federal no call list from pursuing lawful claims under the TCPA and MMPA for knowingly deceptive marketing practices.

d.      By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter providing it to countless other telemarketers so they could illegally call Plaintiff's phone, clearly registered on the Federal and State no call list, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

e.      The badgering of the Plaintiff with myriad unwanted telemarketer solicitations by phone and text to purchased insurance policies, when all he sought, and believed he would receive, was an anonymous right to privacy.

f.      Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter, and NH to hire the other Defendants, who they knew or reasonably should have know were making calls to the 244.3 million people listed on the federal do not call

44

registry and 2.5 million on the Missouri do not call registry in an effort to conceal the identity of the telemarketers, and provide the Defendants with a false and misleading façade of plausible deniability, when they are 100% culpable and funded the illegal calls and texts to the Plaintiff and others similarly situated on the federal no call registry.

        g.     By "spoofing" area codes to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents their agents, vendors by and through the aid and assistance of the robo-call and ATDS dialing systems.[5]

        h.     As a direct result of the deceptions, false pretense, misrepresentation, unfair and fraudulent practices, concealment, and omission of these material facts of Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems, including text messages, the Plaintiff has suffered continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand from his employer and loss of thousands of

---

[5] Telemarketers cause a local number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

dollars in bonus opportunities, injuries to his privacy rights, his mental health and wellbeing, and other damages, warranting treble and punitive damages.

142.    Plaintiff registered his number on the Missouri State and Federal no call lists to protect his privacy and solace, and for that of his family and Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents, by and through its employees, agents and vendors have deliberately and deceptively invaded the province of and violated his right to privacy.

143.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents, by and through its employees and agents, actions constitute a pattern and practice of deceptive and unfair conduct.  Defendant's tactics were designed to exploit consumer fears, cause stress, physical injuries, pain, suffering and violate federal and state law, and to deceptively uncover consumers private information so the Defendants could conduct unwanted and unwarranted solicitation calls and induce consumers to provide substantial payments for Defendant's services.

144.    Section 407.025 RSMO gives the Plaintiff the right to recover actual damages, Punitive damages, and reasonable attorney's fees and costs.

145.    As a result of  Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents, by and through its employees, agents and vendors use of fraud, deception, false pretense, false promise, misrepresentation, or unfair practice, and/or of Defendant's concealment, suppression, or omission of a material fact in connection with its sale of the services,

46

Plaintiff has suffered an ascertainable loss of money or property, severe stress, anxiety, chest pain, loss of sleep, and privacy in an amount greater than $75,000.00.

WHEREFORE, Plaintiff prays this Court enter judgment against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH and its employees and/or agents and vendors, awarding him actual damages that is fair and reasonable, plus punitive damages in an amount that will fairly and reasonably punish Defendants for their deliberate misconduct and be expected to deter others, reasonable attorney's fees and costs, and such further relief this Court deems just and proper.

## COUNT V
## Defendants' Direct or Vicarious Liability

COMES NOW, Plaintiff and for his fourth cause of action against Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and its employees and/or their agents, vendors and other unknown telemarketers on their behalf, states:

146.    Plaintiff reasserts and incorporates fully herein by reference each of the above paragraphs as though fully set forth herein.

147.    For 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

148.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the*

*Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

149.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were **judgment proof, unidentifiable, or located outside the United States, as is often the case.** Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

150.    The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

151.    A direct connection exists between all Defendants herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, so they could all profit from a common enterprise in which they all substantially participated.

152.    "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (l0th Cir. 2013).

153.    Defendants USHA, Carr, McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon, Thomson, Hiter, and NH, and their independent contracting agents are directly liable and responsible for the phone calls at issue because John and Jane Does or USHA  actually made or initiated the calls to Plaintiffs or they substantially participated.

154.    Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter, and NH, are vicariously liable for the calls complained of by Plaintiff herein because they:

a)    authorized or caused John and  Jane Does 1 through 50 to initiate the phone calls or initiated the calls and texts themselves;

b)    directly or indirectly controlled the persons who actually made or initiated the calls;

c)    allowed the telemarketers and independent agent access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell their insurance using robocalling and direct dialing;

d)    allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendants' sales or operational systems;

e)    approved, wrote, reviewed or participated in developing the telemarketing sales scripts;

f)      Defendants reasonably should have known or consciously avoided knowing that

the actual telemarketers were violating the law and Defendants failed to take effective

steps within their power to require compliance; OR

g)      Defendants gave substantial assistance or support to John and Jane Does and each

other while knowing, consciously avoiding knowing, or being recklessly indifferent to

the fact that John and Jane Does were engaged in acts or practices that violated the

TCPA, and/or the MMPA.

155.    Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter,

and NH co-conspirators the John and Jane Does apparently had authority to engage

in the autodialing, texting and robocalling at issue herein because after Plaintiff patiently listened

to the scripted sales pitch the Defendants al profited from each and every sale.

157.    Defendants USHA, Carr, McQuagge, UHG, Witty, McMahon, Thomson, Hiter,

and NH ratified the robocalls to Plaintiff described above because they

accepted and intended the benefits to them of the calls while knowing or consciously avoiding

knowing their telemarketer-agents were robocalling and automated texting cell phones and

phone numbers listed on the Federal and Missouri State Registry without complying with the

Registry and without prior express written consent of the robocalled, called, and texted

consumers.

WHEREFORE, Plaintiff prays for entry of judgment against Defendants USHA, Carr,

McQuagge, Doe's 1 through 50 ("Doe's", "Telemarketers", "Agents"), UHG, Witty, McMahon,

Thomson, Hiter, and NH, and their independent contracting agents for his statutory, actual and/or

treble damages sufficient in size to set an example and deter in the future the conduct complained

of by Defendants or others. Plaintiff prays for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees and costs.

Respectfully submitted,


/s/Edwin V. Butler, Esquire
Edwin V. Butler Mo. 32489
Attorney At Law
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

Attorney for the Plaintiff

Certificate of Service

I hereby certify that the above and foregoing Answer was served electronically this 27th day of January 2023, on Attorney for the Defendants, Ericka Gibbs, via ECF/CM filing and email at GibbsE@ushealthgroup.com. This document was also scanned for viruses using Windows Defender 2022 and is free of viruses and malware.

/s/Edwin V. Butler
Edwin V. Butler
