IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Christopher Prosser,<br><br>        Plaintiff,<br><br>   v.<br><br>USHEALTH Advisors, LLC;<br>Patrick Carr;<br>Troy A. McQuagge;<br>James White;<br>John and Jane Does 1 through 50;<br>UnitedHealth Group, Inc.;<br>Andrew Witty;<br>Dirk McMahon; and<br>Brian Thompson,<br><br>        Defendants. | Case No. 4:23-cv-00124-MTS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Plaintiff Christopher Prosser's First Amended Complaint should be dismissed in its entirety. The Court lacks personal jurisdiction over Patrick Carr, Troy A. McQuagge, James White, Andrew Witty, Dirk McMahon, and Brian Thompson (collectively, the "Executive Defendants"), and UnitedHealth Group, Inc. ("UHG"), requiring dismissal of those Defendants under Fed. R. Civ. P. 12(b)(2). Even if the Court determines it has jurisdiction over some (or all) of those Defendants, Plaintiff has also failed to state any claim upon which relief can be granted against any Defendant, including USHEALTH Advisors, LLC ("USHA"), requiring dismissal of all claims with prejudice under Fed. R. Civ. P. 12(b)(6).

## I. Introduction

On December 28, 2022, Plaintiff sent an online request to be contacted about health insurance quotes. In response to that request, Plaintiff was contacted via phone and text message about health insurance products that USHA could assist him in securing. Even though he initiated the contact, Plaintiff sues USHA and now argues that the calls and texts that he invited were sent in violation of the Telephone Consumer Protection Act ("TCPA") as well as Missouri state law, and he seeks hundreds of thousands in alleged statutory damages for himself and a putative class. Not content to name only USHA as a Defendant, Plaintiff also adds to his pleading a bevy of current and former corporate executives[1] and USHA's parent company, UHG. Although Plaintiff initially dismissed all of these improperly-named Defendants, *see* Dkt. 26, 27, he inexplicably re-added them in an amended complaint without any basis or explanation.

Plaintiff cannot base a TCPA lawsuit on calls that he invited. He has not made any showing that the Court has jurisdiction over corporate executives and a corporate parent company whose only connection to the alleged calls are attenuated corporate ties, and he cannot state claims against any of the Defendants because he offers nothing more conclusory allegations that have repeatedly been held insufficient in similar TCPA cases. Accordingly, the Amended Complaint should be dismissed for several reasons:

*First,* Plaintiff has failed to meet his burden to establish personal jurisdiction over the Executive Defendants or UHG. None of these Defendants are "at home" in this District, and Plaintiff has not alleged any plausible facts that connect any of the calls at issue to any of these Defendants. At best, the Amended Complaint is a shotgun pleading, which lacks the specific

---

[1] The Executive Defendants are USHA's former President, Patrick Carr; its CEO, Troy A. McQuagge; its former Vice President, James White; UHG's CEO, Andrew Witty; UHG COO, Dirk McMahon, and Brian Thompson, the CEO of UnitedHealthcare, an additional entity with no connection to this lawsuit.

factual allegations required to demonstrate how any of the Defendants are responsible for the allegedly offending calls.  Without well-pleaded facts to connect these Defendants to the calls in issue, there is no basis to exercise personal jurisdiction over any of them, much less state a claim against them.

*Second*, even if all the Defendants could be sued in this forum, the Amended Complaint should still be dismissed because it fails to state a plausible claim against any of them.  Plaintiff has not stated a claim under the TCPA because, in addition to Plaintiff's inviting the calls, the Amended Complaint does not plausibly allege Plaintiff was contacted via an ATDS nor does it allege he was contacted by an artificial or prerecorded voice.  And his inviting the calls dooms his attempt to state a claim under the TCPA's do-not-call provisions, or Missouri's analogue to the TCPA.  He has not stated a claim under the Missouri Merchandising Practices Act because he has not alleged that he purchased or leased anything from any of the Defendants.  Moreover, there is no basis upon which the Executive Defendants can be named in their individual capacities, and no basis upon which any Defendant can be held vicariously liable for calls that they did not make and texts that they did not send.

At bottom, the Amended Complaint is little more than an exercise in copying-and-pasting the same threadbare recitals.  It does not plead the facts that are required to establish personal jurisdiction as to any of the Executive Defendants, nor does it come forward with factual allegations that would state a plausible claim for relief against any Defendant.  It should be dismissed.

## II.   Legal Standard

To avoid dismissal under Rule 12(b)(2), "a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a 'reasonable inference that the

defendants can be subjected to jurisdiction within the state.'" *Velez v. Portfolio Recovery Associates, Inc.*, 881 F. Supp.2d 1075, 1079, 1082–83 (E.D. Mo. 2012) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up).  Because "the applicable federal statute," the TCPA, "does not authorize nationwide personal jurisdiction," and because Plaintiff has also asserted claims under Missouri law, "the existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause." *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).

To avoid dismissal under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "'naked assertions devoid of further factual enhancement,' do not suffice, nor do 'threadbare recitals of the elements of a cause of action.'" *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).  A claim is plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A claim is not plausible when the "complaint pleads facts that are merely consistent with a defendant's liability," *id.*, and the "allegations amount to nothing more than 'mere conclusory statements.'" *Zutz v. Nelson*, 601 F.3d 842, 851 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

**III.   Argument**

    **A.   The Court Lacks Personal Jurisdiction Over UHG and the Executive Defendants**

Plaintiff has not met his burden to make a prima facie showing that the Court has personal jurisdiction over UHG or the Executive Defendants.  In fact, the Complaint includes just one sentence on the issue: "This Court has personal jurisdiction over Defendants because

they either reside in this district and/or made the calls into this District." First Amended Complaint ("FAC") ¶ 18. The Complaint acknowledges that none of these named Defendants reside in Missouri,[2] leaving the allegation that these Defendants "made calls into" the state as the only potential jurisdictional theory. The limited facts pleaded in the Amended Complaint, almost all of which are limited to ¶ 40, are not sufficient to establish personal jurisdiction over any of these named Defendants.

In one of the rare moments of clarity in the Amended Complaint, Plaintiff includes a factual allegation that he spoke on the phone with "the Doe Defendant's [sic] telemarketers," FAC ¶ 38 and provides some detail as to the dates, times, phone numbers, and in some instances names of those telemarketers. FAC ¶ 40. Although telephone calls can establish personal jurisdiction in Missouri, all the Amended Complaint alleges is that the calls in issue were placed by "Doe Defendant telemarketers," which is insufficient to provide a basis for personal jurisdiction over UHG or the Executive Defendants. *Velez v. Portfolio Recovery Associates, Inc.*, 881 F. Supp.2d 1075, 1079, 1082–83 (E.D. Mo. 2012) ("Missouri's long-arm statute, Mo. Rev. Stat. §506.500.1, authorizes the exercise of personal jurisdiction over an entity that transacts business in Missouri when the cause of action arises from such transaction," when "Plaintiff asserts that Defendant" has "direct[ed] numerous telephone calls to Missouri" as the basis for jurisdiction).

Plaintiff's only discernible attempt to plead particular facts to establish personal jurisdiction over a named Defendant focuses on USHA, but he makes no such attempts as to

---

[2] The Complaint states that "USHA is a Texas based company," FAC ¶¶ 7–8 and pleads no facts as to the residences of Carr, McQuagge, and White, but notes that they are employed by USHA, with headquarters in Dallas, Texas. FAC ¶¶ 9–11. Similarly, the Complaint states that UHG is headquartered in Minnesota, ¶ 13, does not allege where UHG is incorporated, and makes no allegations regarding the residences of Witty, McMahon, and Thompson. FAC ¶¶ 14–16.

UHG or the Executive Defendants.  In a footnote, Plaintiff identifies one telemarketer by name that he alleges "is an agent for USHealth Advisors [LLC]," based on a photo of a business card Plaintiff was allegedly texted (but that he did not attach to his Complaint), and an ensuing Google search.  FAC ¶ 40 n.2.  Plaintiff makes no further factual allegations that actually connect any of the alleged calls to a named Defendant, which requires that the claims against UHG and the Executive Defendants be dismissed for lack of personal jurisdiction.

Even if Plaintiff's footnote is sufficient to establish personal jurisdiction over USHA,[3] that jurisdiction does not then extend to UHG or any of the Executive Defendants.  Under Missouri's long-arm statute, when the entity that "made the calls" is an "LLC [which] is a wholly-owned subsidiary" of a defendant over which Plaintiff is attempting to establish jurisdiction, Plaintiff has the "burden of demonstrating that Defendant, rather than the LLC, initiated the contacts with Missouri."  *Velez v. Portfolio Recovery Associates, Inc.*, 881 F. Supp.2d 1075, 1079, 1082–83 (E.D. Mo. 2012).  He has not done that here, as there are no well-pleaded facts demonstrating that UHG, or any of the Executive Defendants, were the ones who personally placed the calls.  The attempts to tie the Executive Defendants to the calls is especially attenuated, as there are no allegations that any of them "worked in Missouri or entered into any contracts in Missouri," confirming that there is no personal jurisdiction over the Executive Defendants in their individual capacity. *A.O.A. v. Rennert*, 350 F.Supp.3d 818, 831 (E.D. Mo. 2018).

The Complaint thus should be dismissed as to all named defendants under Rule 12(b)(2).

---

[3] As explained in Section III(B)(iv), *infra*, USHA disputes that it made any of the calls at issue.

### B.  Plaintiff Fails to State a Plausible Claim Against Any Defendant

In addition to the failure to establish a basis for personal jurisdiction, Plaintiff has failed to state any claim against any of the Defendants, including USHA, providing an additional basis to dismiss under Rule 12(b)(6).

#### i.  Plaintiff Fails to State a Claim That He Was Contacted Without Sufficient Consent Under the TCPA

Plaintiff's first TCPA claim rests entirely on conclusory assertions that are insufficient to survive dismissal. Count I of the Complaint alleges that the Defendants called Plaintiff without sufficient consent. In addition to the fact that Plaintiff was the one who requested to be called about healthcare insurance, the consent requirement at issue in Count I only applies to calls made via an automatic telephone dialing system ("ATDS") or via a prerecorded or automated voice. 47 U.S.C.A. § 227(1)(A), (B).

Plaintiff's allegations that he was contacted via ATDS are conclusory and insufficient. Recently, in *Facebook v. Duguid*, 141 S.Ct. 1163 (2021), the United States Supreme Court decisively limited the definition of an ATDS to devices that "have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Nowhere in the Complaint does Plaintiff plausibly allege he was contacted via an ATDS.

Plaintiff places several conclusory labels on the calls he allegedly received, including "automated text," "call," "text," "atds call," "robo call," "autotext," "ATDS text," and "adts." FAC ¶ 40. Those labels are insufficient—Plaintiff must allege facts about the system that placed these calls that plausibly indicate the system meets the definition of an ATDS under *Duguid*. *See Basham v. Midland Funding, LLC*, 2022 WL 1125500, at *7–8 (E.D. Mo. Apr. 15, 2022); *see also Camunas v. National Republican Senatorial Committee*, 541 F.Supp.3d 595, 602–603 (E.D.

Pa. 2021) (granting a 12(b)(6) motion to dismiss when plaintiff's allegations did "not necessarily mean that [Defendant] use[d] an ATDS to communicate" with plaintiff). Plaintiff's allegations regarding "spoofing" and predictive dialers—including the erroneous assertion that all "[p]redictive dialers constitute an [ATDS]"—are exactly the type of speculative assertions that are insufficient to plausibly allege the use of an ATDS. *Id.* at *8 (rejecting similar claims in light of *Duguid*); *see also Pinkus v. Sirius XM Radio, Inc.*, 319 F.Supp.3d 927, 931–932 (N.D. Ill. 2018) (holding that plaintiff failed to state a claim that defendant used an ATDS when plaintiff merely alleged the defendant used "predictive dialing technology" because not all predictive dialers meet the definition of an ATDS). The Supreme Court chose a narrow definition of an ATDS "because the contrary interpretation" advanced by some Courts of Appeal at the time was overbroad, and because Congress's intent in enacting the TCPA's ATDS requirement was to mitigate the risk posed by dialers that might randomly "'seiz[e] the telephone lines of public emergency services,'" or "could 'simultaneously tie up all the lines of any business with sequentially numbered phone lines.'" *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022) (quoting *Duguid*, 141 S. Ct. at 1167–68, 1171). Plaintiff's allegations are out of step with these concerns about random or sequential dialers, and while they may have been sufficient in some circuits pre-*Duguid*, they are insufficient under post-*Duguid* precedent.

Plaintiff also makes no plausible factual allegations that he was contacted via an artificial or prerecorded voice. The Complaint only makes conclusory allegations that the Defendants "utilized artificial and/or prerecorded voice calls to call" Plaintiff, *see* FAC ¶ 88, which is merely a recitation of an element of a TCPA claim. In fact, the only particular factual assertions Plaintiff makes about the calls contradict the notion that there was an artificial or recorded voice,

as Plaintiff indicates that a "representative started speaking," FAC ¶ 47.  The scant facts alleged do not plead a claim that Plaintiff was contacted by an artificial or prerecorded voice.

### ii.     Plaintiff Fails to State a Do-Not-Call Claim Under Both the TCPA and Missouri Law

Counts II and III of the Complaint allege that the calls to Plaintiff violated the TCPA and Missouri's do-not-call ("DNC") laws because Plaintiff registered the number at which he was called on the Federal and State DNC Registries in February 2022.  FAC ¶ 36.  Both the TCPA's DNC provision and the Missouri DNC law only apply to "telephone solicitations," but communications to "any residential subscriber with that subscriber's prior express invitation or permission" are not considered "telephone solicitations" under either statute.  47 C.F.R. §64.1200(f)(15)(i); Mo. Rev. Stat. § 407.1095(3)(a).  Plaintiff was only called after giving an express invitation to be contacted, which means any calls made to Plaintiff do not qualify as telephone solicitations, and Plaintiff cannot state a claim under either provision.

### iii.    Plaintiff Fails to State a Claim Under the MMPA

The Missouri Merchandising Practices Act ("MMPA") only permits a private civil action by a plaintiff "who purchases or leases merchandise . . . and thereby suffers an ascertainable loss of money or property," but Plaintiff has made no allegation that he purchased or leased merchandise from any Defendant or that he suffered a loss of money or property.  Mo. Rev. Stat. § 407.025(1).  Missouri courts have clarified that "purchase" under the statute "is voluntarily undertaking to secure the receipt of goods or services *in exchange for* the payment of money." *Tolu v. Reid*, 639 S.W.3d 504, 539 (Mo. Ct. App. 2021) (emphasis in original).  Plaintiff has made no allegations that he even attempted to secure one of the insurance policies allegedly marketed by Defendants in exchange for the payment of money.  On that basis alone, Plaintiff's MMPA claim fails.

iv. **Plaintiff Fails to Plead Facts Sufficient to Establish Direct Liability for Any Named Defendant**

Plaintiff cannot establish direct liability as to any named Defendants because Plaintiff fails to plausibly allege that USHA, UHG, or the Executive Defendants placed any of the calls at issue. The only plausible facts that Plaintiff alleges about the calls at issue are limited to ¶ 40 of the Amended Complaint (and even that paragraph is rife with conclusory assertions). In that paragraph, Plaintiff does identify by name some of the people that directly called him, although he has not named any of those callers as defendants. As noted above, Plaintiff makes one allegation in a footnote that attempts to tie one of these callers to a named Defendant, USHA, asserting that the caller is "an agent for USHealth Advisors, Texas." FAC ¶ 40 n.2. However, the relationship between USHA and its individual contractors has been litigated before. As another district court explained, "USHA contracts with Independent Insurance Advisors (Agents)" who "work under contractors acting as 'Regional Leaders,'" and those "Regional Leaders oversee and help their Agents according to their discretion, and the Agents freely perform the job as they want." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 124 (N.D. Tex. 2020). USHA, therefore, "did not contact" the plaintiff in that case, as the calls at issue "were made by non-parties." *Id.* at 132. The Amended Complaint similarly alleges that non-parties actually placed the calls at issue here. The one footnote asserting a connection between a non-party caller and USHA alleges the caller was an "agent" of USHA, but that allegation invokes agency, a theory of vicarious liability, not direct liability.

As explained above, the Complaint makes no attempt to connect a particular call to any of the individual Executive Defendants. The Amended Complaint's conclusory insistence that each of the Executive Defendants are "directly liable," FAC ¶ 147, under each cause of action flatly fails to plausibly state a claim. The Amended Complaint alleges that the Executive

– 10 –

Defendants violated the TCPA "by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the national Do-Not-Call registry," FAC ¶ 98, and that the Executive Defendants "are directly liable and responsible for the phone calls at issue" under the TCPA. FAC ¶ 148.  But in order "to be held directly liable, a person must actually 'initiate' the offending phone call, meaning the person 'takes the steps necessary to physically place a telephone call.'"  *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 961 (8th Cir. 2019) (quoting *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013)).  A "defendant did not 'initiate' the calls" just because he had "'active oversight of, or control over' the TCPA violation, or if he 'personally authorized' it." *Golan*, 930 F.3d at 961.

The Complaint fails to state a claim for direct liability as to the Executive Defendants under this binding precedent.  It includes no allegations that the Executive Defendants took steps to physically place the calls at issue.  Instead, the Complaint repeatedly alleges that the Executive Defendants "promulgated the policy and ratified making the calls," to support a theory of "*direct* liability," FAC ¶ 148, even though that language also invokes an agency theory of *vicarious* liability.  And Plaintiff's theory of vicarious liability fails as well.

      **v.**    **Plaintiff Fails to Plead Facts Sufficient to Establish Vicarious Liability for Any Named Defendant**

The Amended Complaint's vague attempt to hold the Defendants "vicariously liable for the calls complained of by Plaintiff" fails as well. FAC ¶ 149.  A Defendant can only be held vicariously liable for the phone calls at issue if Plaintiff plausibly alleges an agency relationship between the telemarketer that made the call and the Defendant.  "'The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence.'" *Petri v. Mercy Health*, 2016 WL 7048893, at *2 (E.D. Mo. Dec. 5, 2016) (quoting Restatement

(Third) of Agency §1.02; cmt. d).  The Amended Complaint does not include any of the facts necessary to establish vicarious liability under common-law agency principles or Missouri law.  Despite bearing the burden to establish an agency relationship implicating any of the Defendants as the principal, the Amended Complaint merely restates the elements of formal agency, apparent authority, and ratification without alleging any plausible facts that could establish any Defendant as a principal under any theory of agency.

The Complaint fails to plausibly allege facts establishing formal agency.  As the Eighth Circuit has explained, at common law "[a]gency is a legal concept that depends upon the existence of certain factual elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." *Southern Pac. Transp. Co. v. Continental Shippers Ass'n, Inc.*, 642 F.2d 236, 238.  And the elements "under Missouri law" are "(1) the agent has the power 'to alter legal relationships between the principal and a third party,' (2) the agent is 'a fiduciary of the principal,' and (3) the principal has 'the right to control the conduct of the agent with respect to matters entrusted to the agent.'" *Affordable Communities of Mo. v. Fed. Nat. Mortg Ass'n.*, 714 F.3d 1069, 1073–74 (8th Cir. 2013) (quoting *State ex rel. McDonald's Corp. v. Midkiff*, 226 S.W.3d 119, 123 (Mo. 2007).  Mere "labels and conclusions that at all relevant times [a non-party] acted as an agent of [a defendant]" are insufficient.  *Id.* at 1074 (cleaned up).  But such "labels and conclusions" are all the Amended Complaint has to offer.

Plaintiff has not pleaded any plausible facts establishing the elements of agency under common law or Missouri law.  Beyond the one footnote labeling one caller as an agent of USHA, the Amended Complaint includes just one paragraph that merely recites some of the

– 12 –

elements of agency and alleges that all the Defendants had the same agency relationship to the callers.  FAC ¶ 149.  The conclusory label in the footnote and threadbare allegations in paragraph 149 are insufficient to plausibly allege even one of the elements necessary to establish an agency relationship between any caller and USHA (or any other Defendant).  *Affordable Communities of Mo.*, 714 F.3d at 1074 (affirming dismissal when the "complaint had not alleged sufficient facts to satisfy any of the three elements of an agency relationship . . . .").  The Amended Complaint alleges that UHG is the "parent company of USHA," but that is also insufficient, even if he could establish an agency relationship from a caller to USHA (which he cannot).  When a plaintiff's only allegation regarding formal agency is that the defendant "is the parent company of" another company alleged to have made calls in violation of the TCPA "without more, evidence of a 'common legal relationship,' such as the relationship between 'parent corporations and their subsidiaries' is not enough to create an agency relationship."  *Petri*, 2016 WL 7048893 at *2.

As to apparent authority and ratification, the Amended Complaint's only allegations are that the caller mentioned USHA and UHG by name and that "the Defendants all profited from each and every sale," FAC ¶ 150, but the Amended Complaint never alleges that any sale occurred due to any of the calls with Mr. Prosser.  When the "complaint only alleges the live operators' one-sided namedropping of" a product sold by the defendant, the "allegations do not support the existence of active interactions between the telemarketer and the defendant" necessary to establish apparent authority.  *Bennett v. Celtic Insurance Co.*, 2022 WL 865837 at *4 (E.D. Ill. Mar. 23, 2022).  And a mere allegation that the defendant "accept[ed] money obtained in connection with" the alleged agent's calls is not sufficient to establish agency via ratification without further evidence "indicating [Defendant] was aware of collections services

by [agent] that violated the TCPA." *Petri*, 2016 WL 7048893 at *3.  Plaintiff makes no attempt to plead such evidence.

As to the Executive Defendants, even if Plaintiff could establish USHA or UHG as a principal (he cannot), the Eighth Circuit has foreclosed any vicarious liability for the Executive Defendants, noting "where a business entity's officer (or employee) acts on behalf of the business to create an agency relationship with a direct violator, the agency relationship is between the direct violator and the business—not between the direct violator and the officer, unless the officer created the agency relationship in his or her personal capacity (and not on behalf of the business)." *Golan*, 930 F.3d at 961 n.10.  The Complaint makes no attempt to assert an agency relationship between any Executive Defendantss in their personal capacity and any direct violator.

The Complaint should be dismissed in its entirety under Rule 12(b)(6).

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed in its entirety pursuant to Rules 12(b)(2) and/or 12(b)(6).

– 14 –

Dated:  June 15, 2023                                           Respectfully submitted,


/s/ Robert P. Berry
Robert P. Berry, #46236 (MO)
David C. Baxter, #62165 (MO)
BERRY SILBERBERG STOKES PC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5882
Fax: (314) 480-5884
Email: rberry@berrysilberberg.com
          dbaxter@berrysilberberg.com

Geoffrey Sigler
   (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036
Telephone: 202-887-3752
Fax: 202-530-9635
Email: gsigler@gibsondunn.com

Timothy Loose
   (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071
Telephone: 213-229-7000
Fax: 213-229-7520
Email: tloose@gibsondunn.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused a copy of the same to be sent via email to all counsel of record with notice of case activity generated.

/s/ Robert P. Berry