IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Christopher Prosser,<br><br>       Plaintiff,<br><br>   v.<br><br>USHEALTH Advisors, LLC, and John and Jane Does 1 through 50,<br><br>       Defendants. | Case No. 4:23-cv-00124-MTS |

**DEFENDANT USHEALTH ADVISORS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Christopher Prosser has now submitted three iterations of his complaint in the hopes of stating a claim, and once again, he has failed to plead a valid basis for relief. The Second Amended Complaint has been pared down to one defendant but still fails to offer well-pleaded facts that would create personal jurisdiction over USHEALTH Advisors, LLC ("USHA"). Even if the Court had personal jurisdiction, dismissal would still be warranted because Plaintiff has failed to set forth facts demonstrating that USHA violated the Telephone Consumer Protection Act ("TCPA") or Missouri's corresponding do-not-call statute. For the reasons detailed below, USHA's motion should be granted, and the case dismissed in its entirety.

    **I.**   **Introduction**

The crux of Plaintiff's lawsuit is a series of calls about health insurance that he alleges were unwanted. While Plaintiff was called in response to an online request through

– 1 –

"pickhealthinsurance.com,"[1] he nevertheless asserts that the calls were made in violation of state and federal do-not-call statutes. Plaintiff claims that he was called by "Doe Defendant Telemarketers," whom he surmises were "agents" of Defendant USHA. But to hold USHA liable for the actions of third-party telemarketers and to establish this Court's personal jurisdiction, Plaintiff must offer more than conclusory allegations of agency. His failure to plead essential facts warrants dismissal for several independent reasons.

*First,* this Court lacks personal jurisdiction. USHA is not "at home" here, and recent Supreme Court precedent confirms that USHA has not consented to jurisdiction merely because it is registered as a foreign corporation in Missouri. Nor does Plaintiff allege sufficient facts connecting USHA to the calls he alleges receiving. The Second Amended Complaint ("SAC") alleges that the "Doe Defendant Telemarketers" who allegedly called Prosser are "independent contracting telemarketing agent[s]," and attempts to impute the calls to USHA through a theory of vicarious liability. (*See,* e.g., SAC ¶¶ 22, 28, 72–84.) However, the SAC fails to support this theory with factual allegations demonstrating an agency relationship and also lacks allegations that the calls were made within the scope of that agency relationship. Without these allegations, there is no basis for hauling USHA into this Court.

*Second*, even if USHA could be sued in this forum, the SAC still fails to state a claim. Plaintiff has not stated a claim under the TCPA because (in addition to the calls being made in response to a contact request) he does not allege that an automated telephone dialing system was used to call him. The few detailed facts Plaintiff does allege confirm that he was called by live

---

[1] Because Plaintiff has refused to include this fact in his pleadings, USHA recognizes it is outside the scope of the Court's consideration at this stage of the proceedings. Even without considering this fact, the SAC should be dismissed because Plaintiff's failure to connect any of the calls to USHA means he has not met his burden to establish personal jurisdiction, and he has failed to state any claim against USHA on a vicarious liability theory.

people—not a robotic system. Plaintiff's failure to connect any of the calls at issue to USHA means that USHA cannot be vicariously liable under any of Plaintiff's asserted causes of action.

*Third,* Plaintiff's claims under analogous Missouri telemarketing statutes are derivative of his TCPA claim and fail for similar reasons. In addition, Plaintiff's claim under Missouri's do-not-call law is doomed because he fails to plead that he ever placed his telephone number on Missouri's do-not-call registry, a necessary prerequisite.

The SAC is little more than an exercise in copying-and-pasting the same threadbare recitals from Plaintiff's prior deficient pleadings. Plaintiff's inability to assert a claim after three attempts confirms that granting further opportunity to amend would be futile and dismissal should be without leave to amend.

**II.    Legal Standard**

To avoid dismissal under Rule 12(b)(2), "a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a 'reasonable inference that the defendants can be subjected to jurisdiction within the state.'" *Velez v. Portfolio Recovery Associates, Inc.*, 881 F. Supp.2d 1075, 1079, 1082–83 (E.D. Mo. 2012) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (cleaned up). Because "the applicable federal statute," the TCPA, "does not authorize nationwide personal jurisdiction," and because Plaintiff has also asserted claims under Missouri law, "the existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause." *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). While the Supreme Court recently held that a defendant can consent to personal jurisdiction by registering as a foreign corporation if the state's long-arm statute extends jurisdiction based on that registration alone, *Mallory v. Norfolk Southern Railway Co.*, __ S. Ct. __, 2023 WL

– 3 –

4187749, at *7 (June 27, 2023), Missouri's long-arm statute contains no such provision.  Mo. Rev. Stat. § 506.500.

To avoid dismissal under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "'naked assertions devoid of further factual enhancement,' do not suffice, nor do 'threadbare recitals of the elements of a cause of action.'"  *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).  A claim is plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A claim is not plausible when the "complaint pleads facts that are merely consistent with a defendant's liability" (*id.*) and the "allegations amount to nothing more than 'mere conclusory statements.'"  *Zutz v. Nelson*, 601 F.3d 842, 851 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

**III.   Argument**

    **A.   The Court Lacks Personal Jurisdiction Over USHA**

Plaintiff has not met his burden to make a prima facie showing that the Court has personal jurisdiction over USHA.  Because Plaintiff alleges that the calls were actually made by "Doe Defendant Telemarketers," his jurisdictional argument relies heavily on the assertion that USHA is "a registered foreign corporation in Missouri."  (SAC ¶ 11).  The Supreme Court recently confirmed this is insufficient.  In *Mallory v. Norfolk Southern Railway Co.*, __ S. Ct. __, 2023 WL 4187749 (June 27, 2023), the Court held that registering as a foreign corporation is sufficient grounds for exercising personal jurisdiction only if that action constitutes consent under the state's long-arm statute.  *Mallory* involved Pennsylvania's long-arm statute, which "is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general

– 4 –

personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Id.* (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)).  But, if there is no such provision in the state's long-arm statute, then the Supreme Court confirmed that its prior precedents on personal jurisdiction remain intact.  *Id.* at *8.

Missouri's long-arm statute does not contain an equivalent provision to the Pennsylvania statute at issue in *Mallory*.  Mo. Rev. Stat. § 506.500.  As a result, the simple fact that USHA is a registered foreign corporation in Missouri is not sufficient to establish personal jurisdiction.  *See Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *4 (E.D. Mo. Jul. 1, 2015) (holding a defendant did not consent to jurisdiction in Missouri just because it "registered to do business in Missouri and has a registered agent in Missouri.").  Instead, Plaintiff must show that there are sufficient facts to connect USHA to the relevant conduct in Missouri, which he has failed to do.

Under Missouri law, when general personal jurisdiction is lacking and the defendant does not consent to personal jurisdiction, "the plaintiff bears the burden of establishing that (1) the suit arose out of the activities enumerated in the Missouri long-arm statute, Section 506.500; and (2) the defendant has sufficient minimum contacts with Missouri to satisfy due process requirements." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W. 592, 600 (Mo. Ct. App. 2000).  When evaluating whether Plaintiff has made the required prima facie showing, the two "inquiries should be analyzed separately." *Arnold v. AT&T, Inc.*, 874 F. Supp. 2d 825, 830 (E.D. Mo. 2012) (citing *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011).

Plaintiff has not shown that the suit arises out of activities enumerated in the Missouri long-arm statute.  Under Missouri's long-arm statute, "personal jurisdiction is authorized only to the extent that the cause of action arose out of an activity covered by" the statute, and those

activities are limited to "defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state." *Viasystems*, 646 F.3d at 593 (citing Mo. Rev. Stat. § 506.500.1) (cleaned up). The SAC acknowledges that USHA is not at home in Missouri,[2] and it does not allege that Plaintiff completed any business transactions or made any contracts with USHA. Plaintiff's only allegation that a tort was committed in the state are limited to calls that were made by "Doe Defendant Telemarketers" (SAC ¶ 21, 81), not USHA.[3] That allegation is not sufficient to establish personal jurisdiction over USHA.

A similar set of allegations warranted dismissal in *Velez v. Portfolio Recovery Associates, Inc.*, 881 F. Supp.2d 1075 (E.D. Mo. 2012). There, Judge Fleissig dismissed a TCPA claim for lack of personal jurisdiction under Missouri's long-arm statute because "Plaintiff ha[d] not met her burden of demonstrating that Defendant, rather than" the entity that actually placed the calls at issue, "initiated the contacts with Missouri," and failed to "demonstrate[] that Defendant's involvement with or control over the" entity that placed the calls "is sufficient to allow it to be haled into this Court under the Missouri long-arm statute on the basis of" the calling entity's actions. *Id.* at 1083. The same conclusion is warranted here.

Plaintiff's conclusory assertion of agency is not sufficient to create a jurisdictional tie between the telemarketers that placed the call and USHA. To "exercise personal jurisdiction over a defendant through the acts of his agent," the "'party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency and the scope of the agent's

---

[2] The SAC states that "USHA is a Texas based company . . . ." (SAC ¶8).
[3] In a separate TCPA case, a district court explained that USHA "did not contact" the plaintiff because the calls at issue "were made by non-parties." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020). The SAC identifies several people that allegedly placed the calls at issue, including individuals allegedly named Joseph; William; Stephanie Darossa; and Mike Greenstein, but Plaintiff chose not to name any of them as parties to this case. Plaintiff may have alleged those named individuals contacted him, but for the reasons explained in *Hirsch*, USHA itself did not contact Plaintiff.

authority.'" *Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (quoting *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W. 877, 879 (Mo. Ct. App. 1996). At common law, as the Eighth Circuit has explained, "[a]gency is a legal concept that depends upon the existence of certain factual elements: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." *Southern Pac. Transp. Co. v. Continental Shippers Ass'n, Inc.*, 642 F.2d 236, 238. And the elements under Missouri law are "(1) the agent has the power 'to alter legal relationships between the principal and a third party,' (2) the agent is 'a fiduciary of the principal,' and (3) the principal has 'the right to control the conduct of the agent with respect to matters entrusted to the agent.'" *Affordable Communities of Mo. v. Fed. Nat. Mortg Ass'n.*, 714 F.3d 1069, 1073–74 (8th Cir. 2013) (quoting *State ex rel. McDonald's Corp. v. Midkiff*, 226 S.W.3d 119, 123 (Mo. 2007).

Mere "labels and conclusions that at all relevant times [a non-party] acted as an agent of [a defendant]" are insufficient. *Id.* at 1074 (cleaned up). But labels and conclusions are all the SAC has to offer.

Besides labeling the Doe Defendants and one additional caller as agents of USHA, the SAC includes just one paragraph that merely recites elements of agency. (SAC ¶ 82). That scattershot paragraph asserts that USHA "authorized *or* caused John and Jane Does 1 through 50 to initiate the phone calls *or* initiated the phone calls and text themselves," asserts USHA "directly *or* indirectly controlled the persons who actually made *or* initiated the calls *or* had the right to do so," and asserts that USHA "approved, wrote, reviewed, *or* participated in the telemarketing sales scripts *or* had the right to do so." *Id.* (emphasis added). This mishmash of ambiguous, disjointed allegations is not a coherent theory of agency and is insufficient to

– 7 –

plausibly allege even one of the elements necessary to establish an agency relationship between any caller and USHA.  *Affordable Communities of Mo.*, 714 F.3d at 1074 (affirming dismissal when the "complaint had not alleged sufficient facts to satisfy any of the three elements of an agency relationship . . . .").

Nor are these allegations sufficient to establish any sort of apparent authority theory.  Plaintiff alleges that he spoke on the phone with "the Doe Defendant telemarketers," whom he contends "stated they were agents for USHA."  (SAC ¶ 21).  But "apparent authority arise[s] from the acts of the principal, not the alleged agent," and Plaintiff's limited assertions about apparent authority focus entirely on the acts of the alleged agents, not anything that USHA is alleged to have said or done.  *Romak USA*, 384 F.3d at 985.  When the "complaint only alleges the live operators' one-sided namedropping of" a defendant, the "allegations do not support the existence of active interactions between the telemarketer and the defendant" necessary to establish apparent authority.  *Bennett v. Celtic Insurance Co.*, 2022 WL 865837 at *4 (E.D. Ill. Mar. 23, 2022).  It is insufficient for a plaintiff to "argue[] that he reasonably believed that the telemarketers had apparent authority simply because they mentioned Defendants' products on their calls . . . ."  *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018).  That argument fails because "apparent authority requires that the principal made manifestations *to* the third party (in this case, Plaintiff) that created the third party's reasonable belief," *id.*, but Plaintiff has not alleged any manifestations by USHA.

As to ratification, Plaintiff vaguely asserts that USHA and the Doe Defendants made the calls to profit from a common enterprise "selling insurance policies," (SAC ¶ 77), but the SAC never alleges that any sale occurred due to any of the calls with Mr. Prosser.  And a mere allegation that the defendant "accept[ed] money obtained in connection with" the alleged agent's

– 8 –

calls is not sufficient to establish agency via ratification without further evidence "indicating [Defendant] was aware of collections services by [agent] that violated the TCPA." *Petri v. Mercy Health*, 2016 WL 7048893, at *2–3 (E.D. Mo. Dec. 5, 2016) (quoting Restatement (Third) of Agency §1.02; cmt. D).  Without allegations that sufficiently demonstrate an agency relationship, the critical jurisdictional link between the Doe Defendant Telemarketers who made the calls and USHA is lacking.

> B.      **Plaintiff Fails to State a Plausible Claim**

In addition to the failure to establish a basis for personal jurisdiction, Plaintiff has failed to state any claim, providing an additional basis to dismiss under Rule 12(b)(6).

> i.      **Plaintiff Fails to Plead Facts Sufficient to Establish Vicarious Liability for USHA**

Count IV in the SAC attempts to hold USHA "vicariously liable for the calls complained of by Plaintiff," (SAC ¶ 81), and it fails for the reasons discussed in Section III(A), *supra*.  A defendant can only be held vicariously liable for the phone calls at issue if Plaintiff plausibly alleges an agency relationship, which he fails to do for the reasons discussed above.

> ii.     **Plaintiff Fails to State a Claim That He Was Contacted Without Sufficient Consent Under the TCPA**

Plaintiff's first TCPA claim rests entirely on conclusory assertions that are insufficient to survive dismissal.  Count I of the SAC broadly alleges that "[T]he foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA," including calls to Plaintiff despite his number "being on the National Do Not Call Registry."  (SAC ¶¶ 53–54.)  It is unclear which specific TCPA provisions Plaintiff claims USHA violated.  But in light of the conclusory assertions throughout the SAC, Plaintiff may be alleging that USHA called Plaintiff without

sufficient consent. Aside from the fact that the calls here originated in response to a request for health insurance information, the consent requirement at issue in Count I only applies to calls made via an automatic telephone dialing system ("ATDS") or via a prerecorded or automated voice. 47 U.S.C.A. § 227(1)(A), (B).[4]

Recently, in *Facebook v. Duguid*, 141 S.Ct. 1163 (2021), the United States Supreme Court decisively limited the definition of an ATDS to devices that "have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. Nowhere in the SAC does Plaintiff plausibly allege he was contacted via an ATDS.

Plaintiff places several conclusory labels on the calls he allegedly received, including "automated text," "call," "text," "atds call," "robo call," "autotext," "ATDS text," and "adts." (SAC ¶ 24). Those labels are insufficient—Plaintiff must allege facts about the system that placed these calls that plausibly indicate the system meets the definition of an ATDS under *Duguid*. *See Basham v. Midland Funding, LLC*, 2022 WL 1125500, at *7–8 (E.D. Mo. Apr. 15, 2022); *see also Camunas v. National Republican Senatorial Committee*, 541 F.Supp.3d 595, 602–603 (E.D. Pa. 2021) (granting a 12(b)(6) motion to dismiss when plaintiff's allegations did "not necessarily mean that [Defendant] use[d] an ATDS to communicate" with plaintiff). Plaintiff's singular allegation that some calls used a "predictive dialer" because there was a pause before being connected to a live agent is insufficient to plausibly allege the use of an ATDS. *Id.* at *8 (rejecting similar claims in light of *Duguid*); *see also Pinkus v. Sirius XM Radio, Inc.*, 319 F.Supp.3d 927, 931–932 (N.D. Ill. 2018) (holding that plaintiff failed to state a claim that defendant used an ATDS when plaintiff merely alleged the defendant used "predictive dialing

---

[4] Plaintiff does not allege that any of the calls at issue used a prerecorded or automated voice.

technology" because not all predictive dialers meet the definition of an ATDS).  The Supreme Court chose a narrow definition of an ATDS "because the contrary interpretation" advanced by some Courts of Appeal at the time was overbroad, and because Congress's intent in enacting the TCPA's ATDS requirement was to mitigate the risk posed by dialers that might randomly "'seiz[e] the telephone lines of public emergency services,'" or "could 'simultaneously tie up all the lines of any business with sequentially numbered phone lines.'"  *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022) (quoting *Duguid*, 141 S. Ct. at 1167–68, 1171).  Plaintiff's allegations are out of step with the requirements to plead the use of random or sequential dialers.  While those allegations might have been enough in some circuits pre-*Duguid*, they are insufficient under post-*Duguid* precedent.

        iii.        **Plaintiff Fails to State A Do-Not-Call Claim Under Missouri Law**

Count III of the SAC alleges that the calls to Plaintiff violated Missouri's do-not-call ("DNC") law.  It fails for the simple reason that Plaintiff does not allege his number appeared on the Missouri do-not-call registry.  Plaintiff alleges that he "is the subscriber and sole user of the cell phone number ending with xxx-xxx-8888" and that "[t]his number has been on the National Do Not Call Registry since 2008 and was reregistered by [sic] personally by the Plaintiff in February and May 2022," (SAC ¶¶ 13–14), but he makes no allegation that his number appears on the Missouri Do Not Call Registry or that he personally placed the number on that registry.  This is an essential element of the claim, and the failure to plead it warrants dismissal.  Mo. Rev. Stat. § 407.1098 (establishing liability only for telephone solicitations to residential subscribers who have "given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of such subscriber's objection to receiving telephone solicitation."); *see also Kyle v. Charter Communications, Inc.*, 2020 WL 2028269, at *2 (W.D. Mo. Apr. 27, 2020)

(noting that claims are distinguishable when they involve "telephone numbers on different registries maintained by different governmental bodies . . . .").

## IV. Conclusion

For the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed in its entirety pursuant to Rules 12(b)(2) and/or 12(b)(6).

Dated:  July 5, 2023                               Respectfully submitted,


                              By: /s/ Robert P. Berry

Robert P. Berry, #46236 (MO)
David C. Baxter, #62165 (MO)
BERRY SILBERBERG STOKES PC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5882
Fax: (314) 480-5884
Email: rberry@berrysilberberg.com
       dbaxter@berrysilberberg.com

Geoffrey Sigler
   (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036
Telephone: 202-887-3752
Fax: 202-530-9635
Email: gsigler@gibsondunn.com

Timothy Loose
   (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071
Telephone: 213-229-7000
Fax: 213-229-7520
Email: tloose@gibsondunn.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused a copy of the same to be sent via email to all counsel of record with notice of case activity generated.

/s/ Robert P. Berry