IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher Prosser, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs. | ) ) | |
| Vs. | ) ) | No. 4:23-cv-00124 |
| USHealth Advisors, LLC, and John and Jane Does 1 through 50 Call Center Telemarketers/Agents | ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**PLAINTIFF RESPONSE TO DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

Comes now the Plaintiff, Christopher Prosser, by and through the undersigned counsel and for his response to defendants' motion to dismiss the second amended complaint, states as follows:

**INTRODUCTION**

This is a class action suit under the Missouri No Call List and Telemarketing prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076 and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Defendant USHealth Advisors LLC (hereinafter "USHA") offers a service where they solicit individuals to purchase various types of insurance policies. Defendant USHA and

1

Defendants Doe 1 through 50, use automated systems to make outbound telemarketing calls and text messages to hundreds if not thousands of consumers across the U.S., soliciting consumers to purchase their services and insurance policies. By doing so, Defendant USHA has violated the provisions of the Missouri No Call List and Telemarketing prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076 and it violated the TCPA when it contacted numbers on the National Do Not Call Registry without their express written consent. Defendant has caused Plaintiff and Class Members to suffer injuries because of placing unwanted telephonic sales calls to their phones.

The Defendants do not dispute that they or others acting on their behalf, called and texted Plaintiff's private residential phone number over eighty-seven (87) times without his express written consent and despite the fact that his number was listed personally by Plaintiff on both the Missouri State do not call list and the Federal do not call lists prior to the calls. See Exhibit's A (Plaintiff's Missouri No Call Registry) and Exhibit B (Plaintiff's Federal No Call Registry), Exhibit C (Plaintiff's Phone call history). Plaintiff's Complaint pleads sufficient factual matters, accepted as true, and viewed in the light most favorable to the Plaintiff that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged and therefore states all claims upon which relief can be granted on all counts. Defendants motion should therefore be denied.

## Standard of Review

As recently stated in *Ellebracht, et al., v. Walmart*, 2020 WL 8270523 (W.D. Mo. 2020), when reviewing a motion to dismiss "[u]nder Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]."

*Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

> A. <u>The Eastern District Maintains Personal Jurisdiction over Defendant USHA in that It Transacts Business, has offices and employees in Missouri and Committed the Torts Alleged in Missouri and continues to do so</u>

Defendant USHA alleges that the Plaintiff has failed to plead facts to satisfy personal jurisdiction of this Court over this Defendant because they "are not at home here" and because it does not fall within the provisions of Missouri's Long Arm Statute. Dft. Suggs. at pp. 3-4. The Defendants argument is frivolous. Missouri's Long Arm Statute, Section 506.500 is identical to the facts stated in *Mallory v. Norfolk Southern Railway Co.*, __ S. Ct. __, 2023 WL 4187749 (June 27, 2023). Missouri's Long Arm Statute clearly states:

> "1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, ***who in person or through an agent does any of the acts*** enumerated in this section, thereby **submits such person, firm, or corporation**, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to **any** cause of action arising from the doing of **any** of such acts:
>
>> (1) The transaction of any business within this state;
>> (2) The making of any contract within this state;
>> (3) The commission of a tortious act within this state;
>> (4) The ownership, use, or possession of any real estate situated in this state;

3

>(5) The contracting to insure any person, property or risk located within this state at the time of contracting"

Section 506.500 RSMo.  See also *Hand v. Beach*, 425 F. Supp.3d 1096 (W.D. Mo. 2019). In relevant part, Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business or commit a tort within the state, as to any cause of action arising from the commission of such acts. Mo. Rev. Stat. § 506.500.1. "A person or firm transacts business by visiting Missouri or sending its product or advertising here." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012). These categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction ... to the full extent permitted by the Due Process Clause." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 593 (8th Cir. 2011).

(1) <u>The transaction of any business within this state;</u>

There is no dispute that USHA transacts business in the state of Missouri as evidenced by the myriad of phone calls placed into this and <u>from this District</u> by the defendants/telemarketers, a fact that is undisputed by USHA, as the telemarketers clearly stated that they were calling on behalf of USHA as required by Federal and State law. Defendant USHA also profits from sales made in Missouri, they send their products to Missouri, and they advertise in Missouri. See SAC at ¶¶3-5, 8-9, 11. These acts alone subject them to the Jurisdiction of this Court. *Hand v. Beach KC, LCC*, 425 F.Supp.1096 (W.D. Mo. 2019).

(3) <u>The commission of a tortious act within this state;</u>

The illegal calls placed by the Defendants are a tort and "interfered with Plaintiff's person" as they violated his right to privacy and seclusion, interrupted him and caused concrete

4

injury. The "vast majority of post-*Spokeo* TCPA cases have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury." *Sandusky Wellness Ctr.*, 250 F.Supp.3d at 357, 2017 WL 1483330, at *3 (internal quotation marks omitted). "Indeed, most courts find that the receipt of even one unwanted call 'is [generally] enough to clear Article III's low bar for a concrete injury.'" *Id.* (quoting *Ung v. Universal Acceptance Corp.*, 198 F.Supp.3d 1036, 1039 (D. Minn. 2016) (Kyle, J.) (collecting cases)). In our case there are admittedly over 90 calls, which clears any bar for concrete injury to the Plaintiff by the Defendants. See SAC at ¶24 et. Seq.

(4) <u>The ownership, use, or possession of any real estate situated in this state;</u>

There is no dispute that Defendant USHA operates and maintains offices in this state, as does their parent company, UnitedHealth Group, Inc., located at 120 S. Central in Clayton, Mo. 63105 and 13655 Riverport Dr, Maryland Heights, MO 63043. The Defendants also accept and did accept process in this state, and they have offices, employees, and agents in this State. A myriad of the phone calls to the Plaintiff by the Defendants and their telemarketers who identified themselves as calling from USHA were made from the St. Louis area code 314. See SAC at ¶24, et seq.

Finally, the parent company UnitedHealth mounted a campaign to harass the Plaintiff after this Complaint was filed by placing his private residential phone number which he listed personally on the Federal and Missouri state do not call registries in early 2022, on their website as the phone number of Dr. Anne Lottes. See Exhibit D, received via email from consumer Emily Freeman who screenshot the website and provided it after calling Plaintiff on July 5, 2023, at his private number found on UnitedHealthcare's website and listed as DR. Anne Lottes. Moreover, although the Defendants denied these facts, UnitedHealth has continued to illegally

5

call the Plaintiff's phone at least nine (9) times from April 10, 2023, through July 5, 2023, despite their counsel's statements that Plaintiff's phone number is on their DNC list. See Exhibit E – screenshot of Plaintiff's phone history for UnitedHealth. Clearly, this Court possesses jurisdiction over these Defendants, in that not only have they committed the tort in this case and subjected themselves to the jurisdiction of this Court, they continue to commit torts against the Plaintiff while this litigation is pending, in addition to maintaining offices in St. Louis, Missouri, being registered with the Secretary of State, having employees in Missouri and transacting business, advertising to and profiting from Missouri consumers.

> B. Plaintiff has stated a claim under the TCPA because he alleges that an automated telephone dialing system was used to call him.[1]

The pleadings must be accepted as true and viewed in the light most favorable to the non-moving party for the purposes of a motion to dismiss. As such, the plaintiff stated a claim upon which relief can be granted that the Defendant's utilized an ATDS to call him. For example, the Defendants ignore paragraph 4, on page two of the SAC, which states "Defendant USHA and Defendants John and Jane Doe 1 through 50, use automated systems to make outbound

---

[1] Although without merit and a pitch in the dirt, the Defendants travel outside the SAC and allege Plaintiff consented to the calls. Of course, Defendants, upon repeated requests, have failed to provide such express written consent, and a motion to dismiss is not the proper forum to advance their baseless affirmative defense. The Complaint clearly states that these calls were made to the Plaintiff's phone without his express written consent – and the Defendants have provided no proof otherwise, although requested. The United States Code and caselaw are well settled on the issue of prior written consent. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent "must be evidenced by a **signed, written agreement *between the consumer and seller***" (emphasis added)); ***Mattson v. New Penn Fin.***, No. 3:18-cv-00990, 2020 WL 6270907 at *4, 2020 U.S. Dist. LEXIS 197955 at *12 (D. Or. Oct. 25, 2020) ("[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the ***specific*** telemarketer that makes the call before the telemarketer can call a number listed on the DNCR." (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii)))." In our case there is no signed, written agreement between the consumer and seller.

6

telemarketing calls and text messages to hundreds if not thousands of consumers across the U.S., soliciting consumers to purchase their services and insurance policies." Equally as compelling, the Defendants ignore paragraph 22, which states "Just prior to being connected to the telemarketer, Plaintiff Prosser heard a click, a several second delay, and the call was then transferred and connected to a USHA employee or independent contracting telemarketing agent." (SAC ¶22, pg. 5). And, once again, the Defendant/Telemarketer's employees, telemarketers, and agents identified themselves as calling on behalf of USHA. As recently held by the District Judge Orlando Garcia, "[a]s a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge." *Atkinson v. Pro Solar LLD d/b/a Momentum Solar*, 2021 WL 2669558 (W.D. Texas 06/16/2021).

Defendants also ignore specific calls the Plaintiff identified in the SAC as being automated texts, atds calls, robo calls, and direct dial calls. See SAC at ¶24, pp. 5-8, and all subparts. Additionally, the Plaintiff clearly stated a claim for vicarious liability, in that Defendant USHA:

> a) authorized or caused John and Jane Does 1 through 50 to initiate the phone calls or initiated the calls and texts themselves;
> b) directly or indirectly controlled the persons who actually made or initiated the calls or had the right to do so;
> c) allowed the telemarketers and independent agents access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell their insurance policies using robocalling atds, texting, and direct dialing;

7

d) the Defendant allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendants' sales or operational systems;

e) The Defendant approved, wrote, reviewed or participated in developing the telemarketing sales scripts or had the right to do so;

f) Defendant USHA knew or reasonably should have known or consciously avoided knowing that the actual telemarketers and agents were violating the law and Defendants failed to take effective steps within their power to require compliance and had the right to do so.

g) Defendant USHA gave substantial assistance or support to John and Jane Does and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that John and Jane Does were engaged in acts or practices that violated the TCPA and MDNC and ratified each of the illegal calls.

SAC at ¶81. Paragraph 82-83 are equally as compelling:

"82. Defendants USHA by and through Does 1 through 50, apparently had authority to engage in the autodialing, direct dialing, texting and robocalling at issue herein because after Plaintiff patiently listened to the scripted sales pitch the Defendant USHA and its agents and employees would all profit from each and every sale thereby ratifying their illegal practice.

83. Defendant USHA ratified the calls to Plaintiff described above because they accepted any potential benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were robocalling and automated texting cell phones and phone numbers listed on the Federal and Missouri State Registry without complying

8

with the Registry and without prior express written consent of the robocalled, called, and texted consumers."

And contrary to the Defendant's eloquent obfuscations, Plaintiff is not required to plead or prove an agency relationship in a TCPA case. To the contrary, for 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995). In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

The FCC has further instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case.*** Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

Finally, the FCC *has rejected* a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the

9

third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019). Instantly, the employees, telemarketers and agents stated in calls and texts that they were calling on behalf of Defendant USHA and that they were either employees or agents of USHA. To that end, the Plaintiff clearly stated a claim upon which relief can be granted.

    C.    <u>Plaintiff's claims under Missouri telemarketing statutes do not fail to state a claim And there is no pleading requirement in Missouri state law which mandates that he plead that he placed his telephone number on Missouri's do-not-call registry</u>.

As a matter of the plain language of the statute, Missouri's No Call law creates standing for those who merely live in a residence where a residential subscriber has lodged his objections to receiving telemarketing calls. Missouri Statute indicates that "No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations. A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or ***the other persons living or residing with such person***." Mo. Rev. Stat. § 407.1095(2).

The SAC makes repeated references to the Plaintiff being registered on the Missouri no call list and the Defendants were provided with a copy of his registration prior to this case even being filed. See Exhibit's A (Plaintiff's Missouri No Call Registry) and Exhibit B (Plaintiff's Federal No Call Registry); and see also SAC at ¶¶8, 9, 18, 23, Pp. 5, fn.1, Pp. 7, fn. 2, pp. 26. To that end there can be no prejudice to USHA. Moreover, to quell the defendants hypertechnical contention, the Plaintiff has filed a motion for leave to amend the complaint by interlineation to add the few words already known to Defendants of which the Defendants complain.

10

WHEREFORE, for the foregoing reasons, the Plaintiff prays this Court to issue its order denying the Defendants motion to dismiss and for such further relief deemed just in the circumstances.

Respectfully submitted,

/s/Edwin V. Butler, Esquire
Edwin V. Butler Mo. 32489
Attorney At Law
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

Attorney for the Plaintiff

Certificate of Service

I hereby certify that the above and foregoing response to the Defendants motion to dismiss the Second Amended Complaint was served electronically this 11th day of July 2023, on all Attorneys of record via ECF/CM filing and notification system. This document was also scanned for viruses using Windows Defender 2022 and is free of viruses and malware.

/s/Edwin V. Butler
Edwin V. Butler

12