IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Christopher Prosser,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>USHEALTH Advisors, LLC, and John and Jane Does 1 through 50,<br><br>　　　　　Defendants. | Case No. 4:23-cv-00124-MTS |

**DEFENDANT USHEALTH ADVISORS, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Once again, Plaintiff has responded to USHEALTH Advisors, LLC's ("USHA") motion to dismiss by amending the complaint[1] and offering extraneous information that goes beyond the four corners of the pleadings. And once again, these efforts confirm that Plaintiff has still failed to plead a basis for personal jurisdiction over USHA or for holding USHA vicariously liable for calls that were allegedly placed by independent third parties.

The driving theory of Plaintiff's complaint is that he was called and texted against his wishes by "telemarketers and independent agents." (Third Amended Complaint ("TAC") ¶ 81,

---

[1] In response to USHA's motion to dismiss (Dkt. 61), Plaintiff moved to amend/correct his Second Amended Complaint by interlineation (Dkt. 63). That amendment affects only one alternative ground for dismissal of the Missouri Do Not Call cause of action. Because all other aspects of the motion are not impacted, the Court has instructed USHA to file its reply brief, noting this history. *See* Ex. 1 (Email from clerk Zoe Wolkowitz requesting reply brief from USHA).

– 1 –

Plaintiff Resp. to Defendant's Mot. to Dismiss Second Amended Class Action Complaint (hereinafter "Opp.") at 7.)  These communications from third-party telemarketers allegedly violated state and federal do-not-call laws.  The opposition repeatedly argues that USHA can be held liable for the acts of these "independent agents," but it points to no well-pleaded facts that would support that conclusion.  Instead, Plaintiff argues that he "is not required to plead or prove an agency relationship in a TCPA case." (Opp. at 9.)  Plaintiff is wrong.  Because Plaintiff's claims rest on allegations that the callers were agents of USHA, in order to establish personal jurisdiction and state a claim here, Plaintiff must allege facts showing that USHA controlled the activities of the alleged agents, and that it directed the alleged agents to act in violation of the law.  The operative pleading contains none of these allegations.  Courts faced with similar circumstances have repeatedly granted motions to dismiss.  (*See* Def. USHEALTH Advisors, LLC's Memo. in support of its Mot. to Dismiss Plaintiff's Second Amended Compl., (hereinafter "Mot.") at 6–7).  The same conclusion holds true here, and therefore the same result should follow.

## I. The Court Should Not Consider Plaintiff's New Allegations Raised for the First Time in the Response.

As a threshold matter, when considering the sufficiency of Plaintiff's allegations the Court need not consider new allegations and materials that appear only in Plaintiff's opposition brief.  "[I]t is axiomiatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).  Accordingly, the new purported evidentiary attachments and associated arguments in Plaintiff's opposition should be disregarded, because Plaintiff "is bound by the allegations in the Complaint," and limited to "the sufficiency of the allegations to those in the Complaint . . . ." *Hawse v. Page*, 2020 WL 2322999, at *4 (E.D. Mo. May 11, 2020).

Specifically, the new irrelevant allegations are:

- USHA engaged in an alleged "campaign to harass the Plaintiff" by "placing his private residential phone number" as "the phone number of Dr. Anne Lottes," which contention is based on a screenshot that Plaintiff received from an unknown, non-party "consumer Emily Freeman." (Opp. at 5); and

- Call history screenshots, in which Plaintiff marked the calls with the names "United Health Group Telemarketer," and "US Health Advisers Telemarketers" (Dkts. 65-3, 65-5), and claims the contact entries he created provide supposed proof that USHA is liable for the calls.

Even if the Court were to consider these self-serving allegations, they would not save Plaintiff's claims. As discussed below, the new arguments do not move the needle on setting forth facts needed to support a vicarious liability theory or personal jurisdiction over USHA.

## II. Plaintiff does not Plead any Basis for Personal Jurisdiction.

As USHA demonstrated in its Motion, Plaintiff's inability to plead a vicarious liability theory dooms his effort to establish personal jurisdiction because the only jurisdictional contacts he identifies are those of independent third parties. Plaintiff's attempt to argue there is jurisdiction based on USHA's own conduct under the Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Co.* misunderstands the case and its holding.

### A. Plaintiff mischaracterizes the statute at issue in *Mallory.*

In *Mallory*, the Supreme Court held that registering to do business in Pennsylvania was sufficient to create personal jurisdiction because Pennsylvania's statute authorized general jurisdiction on this basis: "'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over [that] registered foreign corporation." *Mallory v.*

– 3 –

*Norfolk Southern Railway Co.*, 143 S. Ct. 2028, 2037 (2023) (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)).  The Court explained that, because of that language, Norfolk Southern "understood it would be amenable to suit on *any* claim" as a result of its decision to register to do business in Pennsylvania as a foreign corporation.  *Mallory*, 143 S. Ct. at 2037 (emphasis added).

In contrast, Missouri's long-arm statute *does not* say that by registering to do business here, a foreign corporation is consenting to general personal jurisdiction.  Instead, as Plaintiff himself acknowledges, the statute *only* subjects USHA to suits "'arising from the doing of'" specific enumerated acts.  (Opp. at 3) (quoting Mo. Rev. Stat. § 5600.500).  The specific acts that could theoretically provide a basis for jurisdiction here are all the acts of other parties—the business conduct and alleged violations of the law that Plaintiff challenges are all calls that were placed by third-party "telemarketers and independent agents." (TAC ¶ 81.)

Plaintiff's arguments to the contrary are unavailing.  *First*, Plaintiff argues that the claims arise out of USHA's transaction of business in Missouri, specifically "phone calls placed into this and from this District" by "telemarketers [who] stated they were calling on behalf of USHA . . . ." (Opp. at 4).  That argument fails because, for the reasons explained in § II(B) *infra*, the alleged one-sided namedropping of USHA by third-party telemarketers is not enough to hold USHA liable for those calls.  Plaintiff must allege that USHA held the agents out to him as USHA's representatives, and that USHA exercised sufficient control over their activities.  None of those facts are present.  *Second*, Plaintiff argues the claims arise out of the commission of torts by USHA, but that fails for the same reason—the only "tort" alleged is placing telephone calls, which were made by third-parties.  *Third*, Plaintiff argues the claims arise out of USHA's ownership, use, or possession of real estate in Missouri.  But Plaintiff's claims in the TAC make

no mention of real estate owned by USHA, and the bare assertion in Plaintiff's response brief that USHA and its parent company maintain some offices in Missouri does not establish that the claims here about telephone calls arise out of the ownership, use, or possession of those offices. For these reasons, Plaintiff has failed to identify any conduct by USHA that would form a basis for personal jurisdiction.  And as discussed immediately below, he has also failed to allege facts that would allow third-party conduct to be attributed to USHA for purposes of the jurisdictional analysis.

> **B.** **Plaintiff fails to identify allegations in the operative complaint that provide a basis to hold USHA liable for the calls.**

Plaintiff fails to directly address any of USHA's arguments as to why the allegations in the operative complaint are insufficient to make USHA vicariously liable.  Instead, he copies-and-pastes conclusory allegations from the Complaint, saying that these pleaded conclusions are all he needs to get past the *Twombly* and *Iqbal* pleading thresholds.  (*See* Opp. at 7–10).

Plaintiff broadly asserts that "the employees, telemarketers and agents stated in calls and texts that they were calling on behalf of Defendant USHA and that they were either employees or agents of USHA" (*Id.* at 10), without clarifying which calls came from whom, or what was said on that call with respect to whether the person was an employee compared to an independent agent.  Simply stating that the callers said they "were either employees or agents" is not enough to establish a basis for vicarious liability, as the *Hirsch* court previously recognized when holding in an analogous context that USHA does not employ telemarketers directly.  (*See* Mot. at 6 n.3) (citing *Hirsch v. USHEALTH Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020)). USHA raised this argument and cited this case in its brief, yet Plaintiff's opposition provides no response.

Plaintiff's response instead focuses on FCC guidance, arguing that these orders absolve him of any need to plead facts to support his vicarious liability theory. (Opp. at 9.) That is not what the FCC orders say, and it is not how the courts have interpreted them. Before a vicarious liability theory can proceed, these decisions require a plaintiff to plead the facts that would suffice to create an agency relationship under federal common law. *In the Matter of Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574 (2013) (requiring elements of agency to be met in order to proceed on a vicarious liability theory); *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) ("[Plaintiff]'s complaint lacks sufficient facts showing [Defendant] manifested to the public that [Caller] was its agent."); *Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678, 679–80 (9th Cir. 2014) (affirming dismissal of TCPA claim when plaintiff failed to assert facts demonstrating vicarious liability via "classical agency," "apparent authority [or] ratification . . . ."). While the FCC has acknowledged that there can be vicarious liability in tappropriate circumstances, nothing in the FCC's order or subsequent caselaw relieves Plaintiff of his obligations to plead the facts supporting that theory.

It is insufficient for Plaintiff to broadly allege, as he does in the TAC, that the calls were placed by "Defendants USHA and Doe's 1 through 50, and their other agents, employees, and/or vendors." (TAC ¶ 20). These are the "[m]ere 'labels and conclusions that at all relevant times [a non-party] acted as an agent of [a defendant]'" that USHA explained in its motion to dismiss are insufficient to establish agency. (Mot. at 7) (quoting *Affordable Communities of Mo. v. Fed. Nat. Mortg. Ass'n.*, 714 F.3d 1069, 1074 (8th Cir. 2013)). When a plaintiff "d[oes] not supply sufficient facts to support those conclusory allegations" of agency, the allegations state only "*some* sort of relationship, but not necessarily an *agency* relationship." *Escano v. Concord Auto Protect, Inc.*, 2023 WL 4247703, at *4 (10th Cir. June 29, 2023); *see also Christopherson v.*

– 6 –

*Busher*, 33 F.4th 495, 501 (8th Cir. 2022) ("Without further factual enhancement, [Plaintiff's] naked assertions do not suffice."). Plaintiff makes no counter-argument as to why his allegations are sufficient to establish agency in his response, merely restating the exact language from the Complaint that USHA already explained was insufficient.

Plaintiff also chooses to ignore USHA's arguments that apparent authority is not pleaded because there are no representations *by USHA* as to the alleged agent's authority. He instead regurgitates the language from the Complaint without bothering to respond to USHA's arguments. (Mot. at 8). Indeed, Plaintiff doubles-down on his erroneous argument that apparent authority was established because the callers—not USHA—stated they were calling on USHA's behalf. (Opp. at 10). The opposite is true; "apparent authority arise[s] from the acts of the principal, ***not*** the alleged agent." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004) (emphasis added). Indeed, "[u]nder Missouri law apparent agency can only be found based on the actions of the principal." *Move Merch, LLC v. Amaru/AWA Merchandising, Inc.*, 2015 WL 927468 (E.D. Mo. Mar. 4, 2015). Plaintiff does not include any allegations of acts by USHA or contacts between him and USHA that would establish apparent authority.

Plaintiff does even less with regard to his failure to plead ratification, merely block-quoting one paragraph regarding ratification from the operative Complaint. (Opp. at 8–9). This does nothing to counter USHA's argument in its motion to dismiss that it is insufficient to allege "that the defendant 'accept[ed] money obtained in connection with' the alleged agent's calls . . . ." (Memo ISO Mot. to Dismiss, Dkt. 61, p. 8–9 (quoting *Petri v. Mercy Health*, 2016 WL 7048893, at *2–3 (E.D. Mo. Dec. 5, 2016)). Plaintiff still does not allege that ***he*** purchased any of the insurance policies allegedly marketed by the callers. Nor does he allege anything more than naked assertions of USHA's knowledge of these calls. Because Plaintiff is alleging

that these calls violated the law, he must allege not only that USHA knew about the calls, but that "the defendant knew the alleged agent's activities violated the TCPA." *Connector Castings, Inc. v. Newburg Road Lumber Co.*, 2017 WL 3621329, at *2 (E.D. Mo. Aug. 23, 2017) (citing *Petri*, 2016 WL 7048893 at *3). There are no allegations that USHA knew the calls violated the TCPA. Nor could Plaintiff amend the complaint to make any such allegations in good faith, because, in reality, the calls were made in response to a request to be contacted about health insurance policies.[2] Plaintiff's blanket assertion that USHA "accepted any potential benefits to them of the calls," (Opp. at 8), is exactly the type of sweeping allegation that is insufficient to establish ratification over any of the specific calls placed to Plaintiff.

### III.   Plaintiff's Response Fails to Address USHA's Arguments as to the Complaint's Failure to Allege the Use of an Autodialer.

Rather than address USHA's arguments as to Plaintiff's failure to allege facts sufficient to state a claim under the TCPA's autodialer provisions, the response fails to address them at all. Plaintiff claims that in the operative Complaint he "plausibly allege[d] that he was contacted via an ATDS or by an artificial or prerecorded voice." (Dkt. 64 ¶ 4). But the words "artificial" and "prerecorded" do not even appear in the TAC. And his assertions regarding an automated telephone dialing system ("ATDS") are a textbook example of conclusory allegations that are insufficient to state a TCPA claim.

Plaintiff wrongly insists that USHA failed to address his allegations regarding an ATDS, when in fact USHA addressed every one of those allegations. Plaintiff claims that "Defendants ignore paragraph 4" which vaguely states that USHA "use[s] automated systems to make outbound telemarketing calls to hundreds if not thousands of consumers across the U.S." (Opp.

---

[2] USHA's motion is not based on this point, as it is beyond the pleadings. USHA raises it only to illustrate why granting Plaintiff leave to amend his pleading for a fourth time would be futile.

at 7). Plaintiff further claimed that "Defendants also ignore specific calls the Plaintiff identified in the SAC as being automated texts, atds calls, robo calls, and direct dial calls." (*Id.*) However, to the contrary, USHA addressed those allegations directly, arguing "Plaintiff places several conclusory labels on the calls he allegedly received, including 'automated text,' 'call,' 'text,' 'atds call,' 'robo call,' 'autotext,' 'ATDS text,' and 'adts.' (SAC ¶ 24). Those labels are insufficient—Plaintiff must allege facts about the system that placed these calls that plausibly indicate the system meets the definition of an ATDS under *Duguid*." (Mot. At 10) (citing *Facebook v. Duguid*, 141 S. Ct. 1163 (2021)). Plaintiff fails to identify any allegations that show the "automated system" he alleges the telemarketers used to contact him actually met the definition of an ATDS that the Supreme Court articulated in *Duguid*—namely a telephone system that places calls using a random or sequential dialer. The complaint contains only labels that fall far short of describing a system that placed calls meeting this standard.

       Plaintiff also argues that "Defendants ignore paragraph 22, which states 'Just prior to being connected to the telemarketer, Plaintiff Prosser heard a click, a several second delay, and the call was then transferred and connected to a USHA employee or independent contracting telemarketing agent.'" (Opp. at 7). Again, USHA addressed this very paragraph, arguing "Plaintiff's singular allegation that some calls used a 'predictive dialer' because there was a pause before being connected to a live agent is insufficient to plausibly allege the use of an ATDS," and citing caselaw "holding that plaintiff failed to state a claim that defendant used an ATDS when plaintiff merely alleged the defendant used 'predictive dialing technology' because not all predictive dialers meet the definition of an ATDS." (Mot. at 10–11) (quoting *Pinkus v. Sirius XM Radio, Inc.*, 319 F.Supp.3d 927, 931–32 (N.D. Ill. 2018)). Rather than respond to this argument, Plaintiff pretends USHA never made it.

– 9 –

Plaintiff has accordingly failed to rebut any of USHA's arguments as to why no claims have been stated under the TCPA's autodialer provisions.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's Third Amended Complaint should be dismissed in its entirety pursuant to Rules 12(b)(2) and/or 12(b)(6).  Plaintiff's claims are all based on alleged calls by independent third-party telemarketers.  Rather than plead facts that would provide a basis to hold USHA liable for those calls, he relies on a series of unsupportable conclusions.  That is not enough to get past a motion to dismiss under *Twombly* and *Iqbal*.  Plaintiff is already on his Third Amended Complaint, and there is no reason to think that these problems will be fixed by giving him leave to amend once more.  The motion to dismiss should be granted, and this case put to rest.

Dated: July 24, 2023            Respectfully submitted,

By: /s/ Robert P. Berry

Robert P. Berry, #46236 (MO)
David C. Baxter, #62165 (MO)
BERRY SILBERBERG STOKES PC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone: (314) 480-5882
Fax: (314) 480-5884
Email: rberry@berrysilberberg.com
       dbaxter@berrysilberberg.com

Geoffrey Sigler
   (*pro hac vice forthcoming*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036
Telephone: 202-887-3752
Fax: 202-530-9635
Email: gsigler@gibsondunn.com

Timothy Loose
   (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Ave.
Los Angeles, CA 90071
Telephone: 213-229-7000
Fax: 213-229-7520
Email: tloose@gibsondunn.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 24, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused a copy of the same to be sent via email to all counsel of record with notice of case activity generated.

/s/ Robert P. Berry