IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher Prosser, individually and<br>on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | |
| Vs. | ) | No. 4:23-cv-00124 |
| | ) | |
| USHealth Advisors, LLC, and | ) | |
| John and Jane Does 1 through 50 | ) | |
| Call Center Telemarketers/Agents | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

**PLAINTIFF SURREPLY TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED CLASS COMPLAINT**

Comes now the Plaintiff, Christopher Prosser, by and through the undersigned counsel and for his surreply to defendants' motion to dismiss the third amended complaint, states as follows:

**Standard of Review**

"Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). The plaintiff must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K-V Pharm. Co.*, 648 F.3d at 591–92. The Court must view the evidence "in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding

1

whether the plaintiff made the requisite showing." *K-V Pharm. Co.*, 648 F.3d at 592. *UMB Bank, N.A. v. Kraft CPAS, PLLC,* 2023 WL 3666879, Slip Op. pp. 2 (W.D. Mo. May 25, 2023).

A.    **Continual Harassment by United Health Group**

As an initial matter, since the filing of this case, as Plaintiff illustrated in his response to the Defendants motion to dismiss, United Health Group – a sister or parent corporation of the Defendant has continuously harassed the Plaintiff, placing his private number on their website and calling him directly. Since the filing of the Third Amended Complaint, the Defendants again contacted Plaintiff from 877-842-3210 on July 19, 2023 at 6:50 pm. USHA contends that the Court not consider this evidence, but perhaps they should explain why they continue to illegally call Plaintiff, a party represented by counsel, on his personal residential telephone number after filing now the Third Amended Complaint when USHA and United unequivocally state Plaintiff is on both of their DNC lists? It appears that a Fourth Amended Complaint should be filed to include these defiant defendants. See Exhibit H, submitted herewith this surreply.

B.    **The Eastern District Maintains Personal Jurisdiction over Defendant USHA in that It Transacts Business, has offices and employees in Missouri, it Committed the Torts Alleged in Missouri and this Court has a Superior interest in Providing the Forum for Injured Missouri Residents**

USHA alleges that the Plaintiff has failed to plead facts to satisfy the personal jurisdiction requirements of this Court because it does not fall within the provisions of Missouri's Long Arm Statute.  Dft. Suggs. at pp. 4.  USHA  ignores the Western Districts most recent ruling in *UMB Bank, N.A. v. Kraft CPAS, PLLC,* 2023 WL 3666879, Slip Op. *4 (W.D. Mo. May 25, 2023), where the consideration for personal jurisdiction is the fact that the company is registered as a foreign corporation in Missouri, appointed a registered agent, they have offices in Missouri, and generate revenue in Missouri and based on those facts they could reasonably anticipate being hauled into a

Missouri Court Id. Indeed, USHA's most glaring shortfall is that "Missouri has a strong interest in providing a forum for its residents when they are injured in their home state." Id. *4; citing *Thurman v. Am. Honda Motor Co.*, No. 22-CV-04007-WJE, 2022 WL 4292331, at * 4 (W.D. Mo. Sept. 16, 2022). And with more than 90 illegal calls to the Plaintiff's private residential Missouri phone number listed on the MDNC and Federal DNC, all at the behest of USHA, this factor weighs in favor of this Court's jurisdiction. Id.

Equally as compelling, "the record does not show it would be inconvenient to litigate this case in Missouri. For all these reasons, and for the additional reasons stated by Plaintiff, the Court finds it has personal jurisdiction over Defendant." Id. Indeed, Defendant USHA has brought in counsel from other states and employed local counsel to litigate this matter and does not complain that litigating this case in Missouri would in any way inconvenience them.

Missouri's Long Arm Statute clearly provides for Jurisdiction in this Court. For example, as the **UMB** Court held, to "subject a nonresident party to specific personal jurisdiction in Missouri, "personal jurisdiction must be proper under both the Missouri long-arm statute and the Due Process Clause." *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1215 (W.D. Mo. 2019). "The reach of a state's long-arm statute is a matter of state law, and federal courts are required to accept the interpretation given the statute by the state supreme court." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012)." *Id*. at pp. 2.

"Under Missouri law, when considering whether specific personal jurisdiction exists over a nonresident defendant, the court must first determine if the defendant's conduct falls within a category enumerated in Missouri's long-arm statute. *State ex rel PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. banc 2018). Missouri's long-arm statute provides, in relevant part:

3

"1. Any ***person*** or firm, **whether or not a citizen or resident of this state**, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to ***any cause of action*** arising from the doing of any of such acts:

(3) The commission of a tortious act within the state[.]

Mo. Rev. Stat. §506.500. 1(3)(***Emphasis added***). The "suit must arise out of the activities enumerated in the long-arm statute." *Dairy Farmers of Am. Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012)." In our case, it is elementary that the well pleaded claims based on MDNC and TCPA violations are a tort and by Defendant USHA's own actions and the actions of their direct employees, independent contractors and vendors have availed themselves of the jurisdiction of this Court. In fact, in *Hand v. Beach Entertainment KC, LLC*, 456 F. Supp.3d 1099, 1136-37 (W.D. Mo. 2020), the Court relied on *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) held that the injury resulting from TCPA violations is sufficient to satisfy Article III standing as there is a concrete injury-in-fact. Citing *Spokeo, Inc. v. Robins* that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, ⸻ U.S. ⸻, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016). The *Golan* plaintiffs had received two answering machine messages stating, "Liberty. This was a public survey call. We may call back later." *Golan*, 930 F.3d at 955. Reviewing the TCPA's purpose and common law tort doctrine, the Eighth Circuit found held:

> [t]the harm to be remedied by the TCPA was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements. The harm here was the receipt of two telemarketing messages without prior consent. These harms bear a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance. It is not dispositive whether unsolicited telephone calls are actually actionable under any common law tort because Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law. Nor does it matter that the harm suffered here was minimal; in the standing analysis we consider the nature or type of the harm, not its extent.

4

*Id.* at 959 (internal citations, quotations, and alterations omitted). Here, putative class members received potentially millions of illegal calls and autodialed text messages that they did not previously consent to receive from Defendant USHA. The Court should therefore find this bears a close resemblance to the receipt of the two short answering machine messages in *Golan. See also Melito v. Experian Mktg. Sols.*, Inc., 923 F.3d 85, 95 (2d Cir.), cert. denied sub nom. *Bowes v. Melito*, ––– U.S. ––––, 140 S. Ct. 677, 205 L. Ed. 2d 440 (2019) (unconsented autodialed text messages represented injury-in-fact); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (two unconsented telemarketing text messages "present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA."); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (one prerecorded call to plaintiff's cell phone was a concrete harm under *Spokeo*).

Defendant USHA relies largely on language in the complaint that their employees, agents, independent contractors, and vendors were simply "name-dropping" (Dfts. Reply at p. 4). Defendant USHA wholly mischaracterizes their direct employees as "third-party telemarketers." A cursory review of their direct relationship with their employees we need only provide one illustration - admitted direct employee, for example, Stephanie Darossa, who professes publicly to working directly for Defendant USHA. See Exhibit F, Id. on page 3, which is attached hereto and fully incorporated herein by reference. Defendant USHA cannot escape the jurisdiction by mischaracterizing their employee relationships. Plaintiff adequately alleged the relationship between its employees, agents, and vendors, each of which knowingly violated the MDNC and TCPA when they called the Plaintiff's phone without his prior express written consent. The United States Code and caselaw are well settled on the issue of prior written consent. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (stating that prior express consent "must be evidenced by a **signed,**

**written agreement _between the consumer and seller_**" (emphasis added)); **_Mattson v. New Penn Fin_.**, No. 3:18-cv-00990, 2020 WL 6270907 at *4, 2020 U.S. Dist. LEXIS 197955 at *12 (D. Or. Oct. 25, 2020) ("[T]he regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the **_specific_** telemarketer that makes the call before the telemarketer can call a number listed on the DNCR." (emphasis added) (citing 47 C.F.R. § 64.1200(c)(2)(ii)))." In our case there is no signed, written agreement between the consumer and seller or any of its employees, agents, or vendors, a fact USHA knew and disregarded for their own benefit. For obvious reasons, the Defendant offers no response to this material fact.

Second, there is evidence of direct relationships with USHA employees, telemarketers and vendors who call directly on behalf of Defendant USHA. There has been no evidence of their lack of association with their employees, contrary to the misplaced reliance of USHA on _Hirsh v. USHealth Advisors_, LLC, 337 F.R.D. 118 (N.D. Tex. 2020). To the contrary, as illustrated in Exhibit F, there is clear evidence that there is a direct employee relationship which will be developed with all the callers throughout discovery. More interesting, a search of the Utah Department of Insurance website illustrates that USHA lists approximately 2,400 different insurance agents as their employees. See Exhibit G, attached hereto and fully incorporated herein by reference. It is reasonable to assume further searches will identify additional agents listed as direct employees of USHA. Clearly this Court has jurisdiction over this Complaint.

C.    **Plaintiff identifies allegations in the operative complaint (Third Amended Complaint) which provides a basis to hold USHA liable for the Illegal Calls**

Primarily, Defendant USHA, by proxy, invited this Court to ignore that arguing an agency issue at this stage of the proceedings is improper, because "agency issues must be determined by a jury"  Aranda v. Caribbean Cruise Line, Inc, 179 F..Supp.3d 817, 828 (N.D. Ill. 2016) (quoting _Cabrera v. Jakabovitz_, 24 F.3d 372, 386 & n. 14 (2d Cir.1994)).

That issue notwithstanding, the Plaintiff clearly stated a claim for vicarious liability, in

that Defendant USHA:

4.    Defendant USHA and Defendants John and Jane Doe 1 through 50, uses automated systems to make outbound telemarketing calls and texts messages to hundreds if not thousands of consumers across U.S., soliciting consumers to solicit the purchase of their services and insurance policies.

5.    By doing so, Defendant USHA has violated the provisions of the Missouri No Call List and Telemarketing prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076 and it violated the TCPA when it contacted numbers on the National Do Not Call Registry without their express written consent. Defendant has caused Plaintiff and Class Members to suffer injuries because of placing unwanted telephonic sales calls to their phones.

"17. On December 30, 2022, Plaintiff Prosser began receiving a substantial number of unsolicited telemarketing calls from Defendant's USHA and John and Jane Does 1 through 50.

18.    The Plaintiff answered the calls and instructed the USHA telemarketers and insurance agents that he was on both the Missouri and Federal No Call Lists, and to cease and desist making unwanted and unsolicited telemarketing calls to his private residential telephone number.

19.    The Defendants then proceeded to offer their insurance services and policy sales.

20.    Despite this, and without Plaintiff's prior express written consent, Defendants USHA, and Doe's 1 through 50, and their other agents, employees and/or vendors placed more than eighty-five (85) telemarketing calls and texts to Mr. Prosser beginning on December 30, 2022, when the first call was made from telephone number (314) 671-0005.

21.    During this series of calls, the Doe Defendant telemarketers stated they were agents for USHA and solicited Mr. Prosser to purchase an Insurance Policy from Defendant's USHA to supplement his Medicare and other medical insurance policies, although he had not requested or given express written permission for any telemarketer to contact him.

22.    Just prior to being connected to the telemarketer, Plaintiff Prosser heard a click, a several second delay, and the call was then transferred and connected to a USHA employee or independent contracting telemarketing agent.

23.    Despite the fact that Plaintiff indicated that they were interrupting his family time and work schedule, and he was extremely busy and did not request the calls,  and that he was on the National and Missouri Do Not Call Registries, and demanded the telemarketers cease all further contact, Defendants USHA and Doe's 1 through 50, continued making additional unsolicited telemarketing calls to the Plaintiff over the next week or more on behalf of the Defendant's USHA.

24.    Each of the illegal telemarketing calls/texts were condoned, encouraged, enticed, and ratified by Defendant USHA as detailed supra:[1]"

Again, in TAC at ¶81, Plaintiff proffered:

a) authorized or caused John and Jane Does 1 through 50 to initiate the phone calls or initiated the calls and texts themselves;
b) directly or indirectly controlled the persons who actually made or initiated the calls or had the right to do so;
c) allowed the telemarketers and independent agents access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell their insurance policies using robocalling atds, texting, and direct dialing;
d) the Defendant allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendants' sales or operational systems;
e) The Defendant approved, wrote, reviewed or participated in developing the telemarketing sales scripts or had the right to do so;
f) Defendant USHA knew or reasonably should have known or consciously avoided knowing that the actual telemarketers and agents were violating the law and Defendants failed to take effective steps within their power to require compliance and had the right to do so.
g) Defendant USHA gave substantial assistance or support to John and Jane Does and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that John and Jane Does were engaged in acts or practices that violated the TCPA and MDNC and ratified each of the illegal calls.

SAC at ¶81. Paragraph 82-83 are equally as compelling:

"82. Defendants USHA by and through Does 1 through 50, apparently had authority to engage in the autodialing, direct dialing, texting and robocalling at issue herein because after Plaintiff patiently listened to the scripted sales pitch the Defendant USHA and its agents and employees would all profit from each and every sale thereby ratifying their illegal practice.

83. Defendant USHA ratified the calls to Plaintiff described above because they accepted any potential benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were robocalling and automated texting cell phones and phone numbers listed on the Federal and Missouri State Registry without complying with the Registry and without prior express written consent of the robocalled, called, and texted consumers."

---

[1] Plaintiff has repeatedly informed the defendants and their employees, vendors, and agents both verbally and through text messages that they have the wrong number, and his number is listed on the Federal and Missouri State do not call registries, and to Stop Calling! Yet they continue to deliberately violate Plaintiff's privacy and right to seclusion, and the protections afforded by both the code and statute and have now called and texted Plaintiff's private number listed on the federal no call registry more than 86 times.

The Plaintiff is not required to plead or prove an agency relationship in a TCPA case. Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019). As illustrated above, this is adequately pleaded. Additionally, Defendant USHA relies upon a Texas District Court decision where they ostensibly contracted with their insurance agents not to be held liable for their illegal actions. Dfts. Reply at pp. 6-7. The Defendant ignores the entire pleading and the fact that USHA cannot avoid liability simply by outsourcing their telemarketing efforts to their own employees and third party agents because they would become "***judgment proof***" for their illegal actions. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

Finally, the FCC, which has been applied by District Courts, has *rejected* a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019)(" the Court follows the Supreme Court's directives in <u>Chevron</u> and defers to the FCC's interpretation. Accord Dobkin v. Enter. Fin. Grp., Inc<u>., 2014 WL 4354070, at *3-4</u> (applying the FCC's distinction between direct and vicarious liability to <u>§ 227</u>) Cf. *Hossfeld v. Gov't Emps. Ins*<u>., 88 F. Supp. 3d at 510</u> (applying federal common law vicarious liability rules to <u>§ 227(b)</u> violations); Smith v. State Farm Mut. Auto. Ins<u>., 30 F. Supp. 3d at 777</u> (applying general common law vicarious liability principles to <u>§ 227(b)</u> violations). The Court will apply the FCC's interpretation in interpreting liability under the TCPA." Id. at 1226. Under this Complaint, the employees, telemarketers and agents stated in calls and texts that they were calling on behalf of Defendant USHA and that they were both

employees and agents of USHA, which imputes both direct and vicarious liability on Defendant USHA.

More compelling is the material fact that USHA corporate counsel Erica Gibb did not deny that USHA was responsible for the calls and they "disseminated Plaintiff's phone number to hundreds of their agents, vendors, and insurance agents without his express written permission for the purpose of making telemarketing calls to Plaintiff." TAC ¶29. The reasonable inference to be drawn from this fact is the direct actions of USHA in supplying the Plaintiff's private residential number listed on the MDNC and DNC without his express written consent was the direct catalyst for the calls. Without USHA supplying the Plaintiff's number to their employees and agents, none of the calls would have been possible. This is a textbook example of the application of both direct and vicarious liability.[2]

As a caveat, Defendant USHA contends that Plaintiff failed to allege that the defendant knew that "the defendant knew the alleged agents' activities violated the TCPA." Primarily, the Defendant USHA did not possess prior express written permission to call the Plaintiff phone number which is indisputably listed on the MDNC and DNC. Despite that well pleaded fact, they disseminated the Plaintiff's number to potentially thousands of employees and agents of USHA, whom they knew, or reasonably should have known was illegal and then were prepared to except the benefits of the sales. To that end, the Plaintiff clearly stated a claim upon which relief can be granted.

### D.    Plaintiff's Response Addresses USHA's Arguments as to the Complaint's Allegations of the Use of an Auto dialer.

---

[2] In fact, Ms. Gibbs sent out a companywide email on January 12, 2023, instructing her employees and insurance agents to cease and desist making illegal calls to the Plaintiff's phone because it was listed on the MDNC and DNC. This email will unequivocally illustrate apparent authority and Plaintiff will seek this email through discovery.

USHA baldly contends Plaintiffs response fails to address their primary motion regarding the failure to state a claim under the TCPA's autodialer provision. Dfts. Reply at pp. 8. Perhaps USHA should read Plaintiff's response at pp. 6-9 again? In any event, the the plaintiff stated a claim upon which relief can be granted that the Defendant's utilized an ATDS to call him. For example, the Defendants ignore paragraph 4, on page two of the TAC, which states "Defendant USHA and Defendants John and Jane Doe 1 through 50, use automated systems to make outbound telemarketing calls and text messages to hundreds if not thousands of consumers across the U.S., soliciting consumers to purchase their services and insurance policies." Equally as compelling, paragraph 22 states "Just prior to being connected to the telemarketer, Plaintiff Prosser heard a click, a several second delay, and the call was then transferred and connected to a USHA employee or independent contracting telemarketing agent." (TAC ¶22, pg. 5) During all these calls, there was a significant pause before Defendants' representative started speaking, which is a telltale sign that Defendants used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers. or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs_ public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*"). And, once again, the Defendant/Telemarketer's employees, telemarketers, and agents identified themselves as calling on behalf of USHA. As recently held by the District Judge Orlando Garcia, "[a]s a practical matter, **no plaintiff will have personal knowledge** of the defendant's telephone system at the

pleadings stage. Only the defendant has that knowledge." *Atkinson v. Pro Solar LLD d/b/a Momentum Solar*, 2021 WL 2669558 (W.D. Texas 06/16/2021).

USHA goes on to state that what Plaintiff heard or the automated texts he received is not enough that he must allege facts about the system use. This argument is contrary to the Courts finding in *Atkinson v. Pro Solar LLD d/b/a Momentum Solar*, 2021 WL 2669558 (W.D. Texas 06/16/2021). The only plausible method to state facts about the Defendants systems is through discovery. USHA does not publish which Automatic Telephone Dialing System they use to make their illegal calls. Should the Defendants be directed to disclose all specifications for every automated telephone dialing system they are utilizing we could then rebrief this issue after a fourth amended complaint is filed. Plaintiff will produce a myriad of automated texts and recordings of the calls the Plaintiff described as atds, robo calls automated texts in TAC ¶24. Further, the Defendants ***falsely*** contend that the words "artificial or prerecorded" do not exist in the TAC. Contrary to their assertions, "Defendants used an 'automatic telephone dialing system' or 'artificial or prerecorded voice' calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders" can be found in TAC at ¶45(a).

WHEREFORE, for the foregoing reasons, the Plaintiff prays this Court to issue its order denying the Defendants motion to dismiss and for such further relief deemed just in the circumstances.

Respectfully submitted,

/s/Edwin V. Butler, Esquire
Edwin V. Butler Mo. 32489
Attorney At Law
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com

(314) 504-0001

Attorney for the Plaintiff

Certificate of Service

I hereby certify that the above and foregoing sur-reply to the Defendants motion to dismiss the Second Amended Complaint was served electronically this 26th day of July 2023, on all Attorneys of record via ECF/CM filing and notification system. This document was also scanned for viruses using Windows Defender 2022 and is free of viruses and malware.

/s/Edwin V. Butler
Edwin V. Butler