UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PROSSER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:23-cv-124-MTS |
| USHEALTH ADVISORS, LLC, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant USHealth Advisors, LLC ("USHA" or "Defendant")'s Motions to Dismiss, Docs. [61], under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court denies the Motion.

**I.     BACKGROUND**

Plaintiff Christopher Prosser filed a class action lawsuit against Defendants USHA and John and Jane Doe 1 through 50[1] (collectively, "Defendants"), alleging claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and the Missouri No Call List and Telemarketing prohibitions, Mo Rev. Stat. §§ 407.1098.1, 407.1076.  USHA offers "a service where they solicit individuals to purchase various types of insurance policies." Doc. [67] ¶ 3. Plaintiff alleges Defendants called and texted Plaintiff over eighty-seven (87) times without his express written consent and despite the fact that his number was listed on both state and federal do-not-call lists. USHA filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and for failure to state a claim.  Doc. [61].

---

[1] Defendant John and Jane Doe's 1 through 50 "are unknown telemarketers, employees, agents or vendors of Defendant USHA." Doc. [67] ¶ 9.

1

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction.  "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). The plaintiff must make a prima facie showing that personal jurisdiction exists by pleading "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K-V Pharm.*, 648 F.3d at 591–92).  That prima facie "'showing must be tested, not by the pleadings alone, but by the affidavits and exhibits' supporting or opposing the motion." *K-V Pharm.*, 648 F.3d at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  The Court views the evidence in the light most favorable to the plaintiff, *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020), and "resolve[s] all factual conflicts in [plantiff's] favor," *K-V Pharmaceutical*, 648 F.3d at 592.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  For a pleading to state a claim for relief it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The complaint must contain facts sufficient to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570  (2007).  A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the "reasonable inference" that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  When considering a Rule 12(b)(6) motion, the Court assumes all a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party.  *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  However, the Court "need

2

not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### III.    DISCUSSION

#### A.    *The Court Has Personal Jurisdiction Over USHA*

The first issue is whether there is personal jurisdiction over non-resident[2] defendant USHA. The Court engages in a two-part inquiry to assess personal jurisdiction over non-resident defendants. To exercise jurisdiction, the Court must find that: (1) USHA's actions are covered by the Missouri long-arm statute, and (2) exercise of jurisdiction comports with due process requirements. *See Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909–910 (8th Cir. 2012) (holding federal district courts in Missouri must conduct separately the long-arm-statute and due-process inquiries). USHA challenges only application of Missouri's long-arm statute.

Under Missouri law, when considering whether specific personal jurisdiction exists over a nonresident defendant, the court must first determine if the defendant's conduct falls within a category enumerated in Missouri's long-arm statute. *State ex rel PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. banc 2018). The "suit must arise out of the activities enumerated in the long-arm statute." *Dairy Farmers of Am. Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012). There are six activities enumerated in Missouri's long-arm statute. *See* Mo. Rev. Stat. § 506.500.1(1)–(6). The Court concludes Plaintiff plausibly alleged facts showing USHA's conduct fell within at least two of the activities enumerated in Missouri's long-arm statute.[3] *See* Mo. Rev. Stat. § 506.500.1(1), (3); *see also Dairy Farmers*, 702 F.3d at 476 (explaining "Missouri courts construe 'transaction of any business' broadly"); *Myers*, 689 F.3d at 910 (discussing Missouri courts interpret subsection (3) to include "extraterritorial tortious acts" that yield consequences in Missouri).

---

[2] The parties appear to agree that USHA is a non-resident defendant, so the Court will analyze personal jurisdiction under such analysis.

[3] This includes USHA's own actions and the actions of its direct employees, agents, contractors, and/or vendors.

B.  *Plaintiff Stated a Claim Against USHA Under the TCPA*

USHA next argues Plaintiff failed to state a claim against it under the TCPA because Plaintiff did not sufficiently allege (1) vicarious liability or (2) use of an automated telephone dialing system ("ATDS").  Neither argument is persuasive.

First, USHA argues Plaintiff failed to establish that it can be vicariously liable for the third-party telemarketing calls and texts at issue.[4]  Plaintiff alleges USHA can be held vicariously liable for messages sent by its "agents" under alternate theories of actual authority, apparent authority, and/or ratification.  USHA argues the facts fail to support any theories of agency liability.  The Court concludes Plaintiff provided specific factual allegations which, if taken as true, could support at least one, if not more, of these theories of agency liability.  *See, e.g.*, *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018) (holding plaintiff alleged the defendant was vicariously liable under the TCPA based on apparent authority where plaintiff had a "reasonable basis" to believe the agents were acting at defendant's direction, the text messages stated they were agents with defendant and referenced insurance products, and the texts were "approved" by defendant").

Second, USHA argues Plaintiff fails to state a claim under the TCPA because he did not allege he was contacted via an ATDS.[5]  47 U.S.C. § 227(b)(1) (prohibiting calls made from an ATDS).  To support its argument, USHA points to *Facebook, Inc. v. Duguid*, where the United States Supreme Court held that to qualify as an ATDS under the TCPA, the equipment in question must use "a random or sequential number generator."[6]  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021).  While

---

[4] The parties do not dispute there is vicarious liability for TCPA violations under "federal common-law principles of agency."  *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016), *as revised* (Feb. 9, 2016).

[5] Notably, under this statute, Plaintiff could also state a TCPA claim based on an "artificial or prerecorded voice."  *See* 47 U.S.C. § 227(b)(1); *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) (discussing the TCPA "separately prohibits calls using 'an artificial or prerecorded voice' (citing 47 U.S.C. §§ 227(b)(1)(A)-(B))).  In the Complaint, Plaintiff appears to allege claims based on this type of TCPA violation.

[6] There, the plaintiff alleged the defendant violated the TCPA by using equipment that specifically did not use a "random or sequential number generator."  *Duguid*, 141 S. Ct. at 1168.  In other words, the pleadings foreclosed the possibility the defendant used ATDS technology.  Here, there is no such definitional quandary.  *See* Footnote 7.

USHA is correct that Plaintiff must eventually show the system used meets *Duguid*'s definition to prevail on his ATDS claim under the TCPA, the pleading standard does not require Plaintiff to plead such "technical matter," *Duguid*, 141 S. Ct. at 1172.  *See Callier v. MultiPlan, Inc.*, 3:20-cv-00318-FM, 2021 WL 8053527, at *17 (W.D. Tex. Aug. 26, 2021)  ("To require Plaintiff to plead the specifics of the technology used to place harassing calls would raise the pleading standard for TCPA claims impermissibly high."); *Atkinson v. Pro Custom Solar LCC*, 5:21-cv-00178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) ("As a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge."); *Jance v. Homerun Offer LLC*, 4:20-cv-00482-JGZ, 2021 WL 3270318, at *3 (D. Ariz. July 30, 2021) (collecting cases that discuss whether a defendant has an ATDS is often a fact exclusively within the defendant's possession).  While a bare allegation that a defendant used an ATDS is likely not enough, Plaintiff pled factual information rendering it plausible the system used meets *Duguid*'s definition of an ADTS.[7]

Accordingly,

**IT IS HEREBY ORDERED** that USHA's Motions to Dismiss, Doc. [61], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to File Surreply, Doc. [69], is **GRANTED**.

Dated this 9th day of August 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[7] Unlike the plaintiff in *Duguid* and other plaintiffs post-*Duguid*, Plaintiff's allegations here do not render it implausible that the device used meets *Duguid*'s definition of an ADTS.  *See, e.g.*, *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F. Supp. 3d 288, 295-97 (E.D. Pa. 2021) (dismissing where plaintiff's allegations showed the "phone numbers were already stored on the device prior to the messages being sent" and thus were not "random or sequential" as *Duguid* required); *Watts v. Emergency Twenty Four*, 1:20-cv-01820, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (same where the equipment previously stored plaintiff's number in a database and called targeted individuals); *Barry v. Ally Fin., Inc.*, 2:20-cv-12378-PDB, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021) (dismissing where there was no dispute about the process use to call and that process did not meet *Duguid*'s definition of an ADTS); *Tehrani v. Joie de Vivre Hosp., LLC*, 3:19-cv-08168-EMC, 2021 WL 3886043, at *6 (N.D. Cal. Aug. 31, 2021) (same); *Mina v. Red Robin Int'l, Inc.*, 1:20-cv-00612-RM, 2022 WL 2105897, at *6 (D. Colo. June 10, 2022) (same).

5